## DISTRICT OF COLUMBIA v. CORNELL.

APPEAL FROM THE COURT OF CLAIMS.

No. 55. Submitted November 1, 1888. — Decided May 13, 1889.

Negotiable certificates, issued by the Board of Public Works of the District of Columbia, redeemed according to law, and cancelled by the proper officers by stamping in ink across the face words stating such cancellation, are thereby extinguished; and if a clerk, who has no duty or authority connected with their redemption or care, afterwards steals them, fraudulently effaces the marks of cancellation, and puts them in circulation, the District of Columbia is not liable to a purchaser in good faith, for value and before maturity.

THIS was an appeal from a judgment of the Court of Claims against the District of Columbia for $7750 and interest on certificates of indebtedness, commonly called sewer certificates, issued by the Board of Public Works of the District, in the following form, with coupons attached:

DISTRICT OF COLUMBIA.

No. 1380.

Washington, July 1st, 1873.

This certifies, that for work done under direction of the Board of Public Works, and chargeable to the private property adjoining and benefited thereby, there is due to the bearer Five Hundred Dollars, payable July 1st, 1876, with eight per centum interest, payable semi-annually, as per coupons attached. Issued in accordance with act of Legislative Assembly; secured by pledge to the Commissioners of the Sinking Fund of assessments made in accordance with act approved June 26, 1873, against private property benefited by improvements, and receivable in payment of such assessments.

Board of Public Works,

By James A. Magruder, Treasurer.

Countersigned:

Horace J. Frost,

For Commissioners of Sinking Fund.

*Registered: Geo. E. Baker, Comptroller.*

*Last six months' interest payable with certificate.*

The material facts, as found by the Court of Claims, were as follows: .

On July 1, 1873, such certificates to the amount of about $2,000,000 were issued by the Board of Public Works, under an act of the legislative assembly of the District of Columbia, approved June 26, 1873, and were paid out to contractors, jobbers and laborers, and soon became greatly depreciated in value, and were bought and sold by brokers and speculators. .

After the creation of the board of audit by the act of Congress of June 20, 1874, c. 337, § 6, most of these certificates, including those in question, were presented to that board and redeemed as provided in that act. 18 Stat. 119.

The certificates so redeemed were cancelled by stamping across the face in ink with a ribbon stamp the words "Cancelled by the Board of Audit." They were then inclosed in jackets, tied up in bundles of fifty in numerical order, and placed on a shelf under the counter in a room in the Treasury Department, occupied by several clerks employed by the board. The fact of redemption was entered in a registry book.

After the redemption and cancellation of the certificates, and while they were in the custody of the board of audit, as above stated, they were stolen, in February or March, 1876, by one George H. Farnham, who was then a clerk in the employ of the board, and occupying a desk behind the counter under which the certificates were deposited, but whose duties were not connected with the redemption or care of the certificates. .

By the use of detersive soap Farnham entirely removed from a large portion of the certificates the marks of cancellation. From other certificates, on which some ink-marks still appeared, he cut off the coupons and pasted them over the partially effaced marks. In this condition no signs or marks of cancellation or redemption were visible on the certificates, but some of them still had a soiled or stained appearance.

The stolen certificates were sold by Farnham to brokers in Washington, and by them to one Ritchie, and by him to the claimant, and all the purchasers bought them for value, in

good faith, and without notice that they had been redeemed or cancelled; and the certificates were then in the same condition, in respect of their appearance as to indicating signs or evidences of cancellation or redemption, as they were at the time they were first negotiated by Farnham, and as they are now.

The judgment of the Court of Claims in favor of the claimant was for the amount of such certificates as were shown to have been so purchased by him before their maturity. 20 C. Cl. 229.

*Mr. Attorney General, Mr. Assistant Attorney General Howard* and *Mr. W. I. Hill* for appellant.

*Mr. Samuel Shellabarger* and *Mr. J. M. Wilson* for appellee.

When a municipality becomes party to a negotiable instrument, by authority of law, it is bound by all the rules of commercial law applicable to such securities. *Cooke* v. *United States,* 91 U. S. 389; *United States* v. *State Bank,* 96 U. S. 30.

Purchasers of municipal securities are entitled to the full benefit of their purchase, unaffected by the consideration of the hardship involved in requiring the municipality to repay obligations once redeemed, and also unaffected by any circumstances merely tending to excite suspicion regarding the purchased obligation. *Cromwell* v. *Sac County,* 96 U. S. 51; *Murray* v. *Lardner,* 2 Wall. 110. And when a trusted agent of the municipality has been guilty of culpable negligence or fraud, whereby an injury is done to a purchaser of its securities, the acts of negligence or fraud are in law those of the corporation. *Atlantic Bank* v. *Merchants' Bank,* 10 Gray, 532; *United States* v. *State Bank,* 90 U. S. 30.

Since it is true, as a matter of law, that the obligations in suit could be lawfully issued and in circulation, and in fact were lawfully issued and in circulation, then the fact that such circulation, as to the particular bonds in suit, was continued, and the bonds came into the hands of claimant as a *bona fide* purchaser, before due, by means of the fraud and wrong-doing of the agent of the District of Columbia, constitutes no

defence.   *Cooke* v. *United States*, 91 U. S. 389; *California*
v. *Wells, Fargo & Co.*, 15 California, 336.   These decisions are
based upon one of the settled and most familiar rules of the
law of commercial paper that where the maker of commer-
cial negotiable paper so deals with it as that it is stolen from
his possession and put into circulation, through the act of the
thief, and, before maturity, passes into the hands of a *bona fide*
holder, without notice of the wrong, there the *bona fide* holder
takes a complete title, and the maker of the note cannot set
up the larceny as a defence.   *Wheeler* v. *Guild*, 20 Pick. 545;
*S. C.* 32 Am. Dec. 231; *Murray* v. *Lardner*, 2 Wall. 110;
*Orleans* v. *Platt*, 99 U. S. 676; *Shaw* v. *Railroad Co.*, 101
U. S. 557; *Collins* v. *Gilbert*, 94 U. S. 753; *Welsh* v. *Sage*,
47 N. Y. 143.

If such a criminally culpable taking up of negotiable papers,
before due, shall, by this court, be held to be a withdrawal
from circulation, and a destruction of the instrument, then it
will be a new experience in the judicial history of commercial
paper.   It is a settled rule of the law merchant, which is ex-
pressed by Lord Ellenborough in *Burbridge* v. *Manners*, 3
Camp. 193, that payment of bills before due does no more
extinguish them than if the note were merely "discounted."
"It is the duty of bankers to make some memorandum on
bills and notes which have been paid, and if they do not the
holders of such securities cannot be affected by any payment
made before they were due."

MR. JUSTICE GRAY, after stating the case as above reported,
delivered the opinion of the court.

When the maker of a negotiable instrument lawfully can-
cels it before maturity, his liability upon it is extinguished,
and cannot be revived without his consent.   It is immaterial
whether the cancellation is by destroying the instrument, or
by writing or stamping words or lines in ink upon its face,
provided the instrument, in the condition in which he puts it,
unequivocally shows that it has been cancelled.   *Scholey* v.
*Ramsbottom*, 2 Camp. 485; *Burbridge* v. *Manners*, 3 Camp.

193; *Ingham* v. *Primrose*, 7 C. B. (N. S.), 82, 86; *Yglesias* v. *Mercantile Bank*, 3 C. P. D. 60.

In *Burbridge* v. *Manners*, Lord Ellenborough said, "It is the duty of bankers to make some memorandum on bills and notes which have been paid," clearly indicating his opinion that the making of such a memorandum upon the securities would be sufficient to protect the bankers from being afterwards held liable to any holder thereof.

The decision in *Ingham* v. *Primrose*, holding the acceptor of a bill of exchange, who had torn it in halves and thrown the pieces into the street, liable to one who afterwards took it, in good faith and for value, from one who had picked it up and pasted the pieces together, proceeded upon the ground that the tearing of the bill into two pieces, as manifest on its face "was at least as consistent with its having been divided into two for the purpose of safer transmission by the post, as with its having been torn for the purpose of annulling it." And the decision can be maintained, if at all, on that ground only. *Baxendale* v. *Bennett*, 3 Q. B. D. 525, 532.

In *Baxendale* v. *Bennett*, one who had given his blank acceptance on stamped paper to another, and authorized him to fill in his own name as drawer, and received it back from him unfilled, and put it in the unlocked drawer of his desk, from which it was afterwards stolen, and filled up, without his authority, by inserting the name of another person as drawer, was held not liable to an indorsee for value.

In *State* v. *Wells, Fargo & Co.*, 15 California, 336, cited by the claimant, treasury warrants of the State of California had been once lawfully issued, presented and paid, but never cancelled in any way before they were stolen and again put in circulation; and the suit was not upon the warrants, but was brought by the State against *bona fide* holders who had presented them a second time, and to recover back the value of bonds which the State had delivered to them in exchange for the warrants, and which they, in good faith, had since parted with.

Much reliance was placed by the claimant upon the case of *Cooke* v. *United States*, 91 U. S. 389, in which the United

States were held by a majority of this court to be liable to a *bona fide* holder of interest-bearing treasury notes, printed by the Treasury Department from genuine plates, and perfect in form, complete and ready for issue, and never issued by any authorized officer, but fraudulently or surreptitiously put in circulation. In the opinion, much stress was laid upon the considerations, that the notes were perfect and complete as soon as printed, and did not require the signature of any officer, but, as soon as they had received the impression of all the plates and dies necessary to perfect their form, were ready for circulation and use; that in this respect they did not differ from coins of the mint when fully stamped and prepared for issue; and that these notes were intended to circulate and take the place of money, to some extent, for commercial purposes; were made a legal tender for their face value, exclusive of interest, as between the government and its creditors, and passed readily from hand to hand as, or in lieu of, money. 91 U. S. 404.

We are not prepared to extend the scope of that decision, and the facts of this case, as found by the Court of Claims. are quite different.

The certificates in suit, after they had been redeemed according to law, were cancelled by the proper officers, by distinctly stamping in ink across the face words stating that fact, and in that condition were made up in bundles and put away on a shelf, whence they were afterwards stolen by a clerk, who had no duty or authority connected with their redemption or care, and who afterwards fraudulently effaced the marks of cancellation, by the use of detersive soap, and by pasting coupons over them, and then put the certificates in circulation.

The provision of the act of Congress of March 3, 1875, c. 162, § 16, by which certain officers of the District of Columbia are required to destroy by burning all redeemed certificates, is in terms and effect merely directory, and does not make the District liable on such certificates fraudulently put in circulation, after they have been otherwise unmistakably cancelled. 18 Stat. 505.

These certificates having been lawfully extinguished by

stamping across their face marks of cancellation as clear and permanent as the original signatures, the liability of the District upon them as negotiable paper could not be revived by its omission to take additional precautions against their being stolen and fraudulently restored to their original condition by such means as ingenious wickedness might devise.

Moreover, these certificates were in no sense money, or the equivalent of money. Though negotiable instruments, they belonged to a peculiar class of such instruments, being made by a municipal corporation, and having no validity unless issued for a purpose authorized by law, and as to which this court has repeatedly laid down and acted on the following rule: "Vouchers for money due, certificates of indebtedness for services rendered, or for property furnished for the use of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind, used for liquidating the amounts legitimately due to public creditors, are of course necessary instruments for carrying on the machinery of municipal administration, and for anticipating the collection of taxes. But to invest such documents with the character and incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregularly or fraudulently issued, is an abuse of their true character and purpose." *Mayor* v. *Ray*, 19 Wall. 468, 477; *Wall* v. *Monroe County*, 103 U. S. 74, 78; *Claiborne County* v. *Brooks*, 111 U. S. 400, 408.

Considering the nature of these certificates, the method in which they had been cancelled, and the means by which they were afterwards put in circulation, we are of opinion that there is no ground for holding the District of Columbia liable to this claimant.

*, Judgment reversed.*