## DURAM BLDG. CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.
### No. 286.

Circuit Court of Appeals, Second Circuit.
July 5, 1933.

Arthur Frank and Claude L. Gonnet, both of New York City, for petitioner.

Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. Arthur Adams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

In February, 1926, the petitioner, Duram Building Corporation, sold two parcels of real estate at a profit over their cost. The issue presented by this appeal is whether it was entitled to return this profit for taxation upon the installment basis, pursuant to section 212 (d) of the Revenue Act of 1926 (26 USCA § 953 (d). The sales were made for part cash and the balance in the purchaser's notes secured by mortgage. The cash received from the purchaser was less than one-fourth of the purchase price; but subsequently, upon dissolution of the petitioner in August, 1926, the aforesaid purchase-money notes and mortgages (as well as a small amount of other property) were distributed to its sole stockholder. $41,758.71 of the value of the property so distributed discharged a debt owed to the stockholder; the remainder being treated as a liquidating dividend. The Commissioner contends that the amount of the debt so paid must be added to the cash payments made by the purchaser earlier in the year, thereby causing the "initial payments" to exceed 25 per cent. of the purchase price and precluding the use of the installment basis in reporting the profit on the real estate sales. This contention was sustained by the Board of Tax Appeals.

Section 212 (d) of the Revenue Act of 1926 gives a taxpayer the privilege of reporting income on the installment basis if "the initial payments do not exceed one-fourth of the purchase price." See Burnet v. S. & L. Bldg. Corp., 288 U. S. 406, 53 S. Ct. 428, 77 L. Ed. 861. It then defines the term "initial payments" as follows:

"As used in this subdivision the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made."

█ But this statutory definition itself requires defining. Although evidences of indebtedness of the purchaser are not to be deemed initial payments, is this likewise true

of what may be realized during the taxable period from disposing to a third person of the purchaser's evidences of indebtedness? The Board has held that what is so realized must be considered "payments received in cash or other property." With this construction of the statute we cannot agree. When the purchaser's notes are sold or otherwise disposed of to a third party, they are not paid, nor does the vendor then receive "payment" for the land in the ordinary sense of the word. In speaking of "payments received," we think the statute refers to payments received from the purchaser of the land. The section comprises in a single phrase payments received in cash or property other than evidences of indebtedness of the purchaser. Clearly evidences of indebtedness of the purchaser can only be received from the purchaser; it is implicit that payments of cash or other property are to be received from the same source. Moreover, when the vendor disposes of the purchaser's notes, he enters into a separate transaction with a third party which may itself result in profit or loss. See Alworth-Washburn Co. v. Commissioner, 25 B. T. A. 140. This is expressly recognized by section 44 (d) of the Revenue Act of 1928. 26 USCA § 2044 (d). That statute of course, is not controlling as to the petitioner's transactions in 1926; but we view it as merely an express recognition of what was equally true under the 1926 act by reason of the general provisions (sections 202–204 [26 USCA §§ 933–935]) with respect to the sale of property by a taxpayer. Compare Meagher v. Com'r, 20 B. T. A. 68, 72; Virginia Beach Golf Course Annex Corp. v. Com'r, 23 B. T. A. 1170, 1175. Therefore, as we interpret section 212 (d), the privilege of reporting upon the installment basis depends upon the transactions between the vendor and purchaser of the land during the taxable period; it is not made conditional upon what disposition the vendor may make of the purchaser's evidences of indebtedness by transactions with third parties during the taxable period in which the land was sold. Such transactions are separate and independent and will themselves be the basis for a return of profit or loss.

No court decision has been called to our attention which contradicts this view. Most of the Board's decisions to the contrary rest upon Packard Cleveland Motor Co. v. Com'r, 14 B. T. A. 118. That was a case where automobiles were sold under installment contracts and all the installment notes were forthwith discounted with a credit company pursuant to an arrangement existing when the automobiles were sold on installments. Clearly the whole profit on the sale was realized in the taxable year in question, whether or not the installment basis of reporting was permitted. Other decisions relied upon, of a similar character, are Mytinger v. Commissioner, 4 B. T. A. 896; Gillies v. Commissioner, 20 B. T. A. 570; Elmer v. Commissioner, 22 B. T. A. 224. It is true that Chapman v. Commissioner, 19 B. T. A. 878, cannot be so explained, but it follows the earlier authorities on the theory that any conversion of an installment note into cash within the taxable period in which the land was sold is an "initial payment." For reasons already stated, we cannot accept the Board's construction of section 212 (d).

■ The Commissioner suggests that the method of reporting on the installment basis presupposes that the taxpayer will continue in business, and should not be deemed applicable when the taxpayer is dissolved during the taxable period in which the sale is made. This is a consideration which might well have weight with Congress in formulating its legislative policy, but we find no such limitation in the statute.

■ The taxpayer's debt to its sole stockholder arose from the fact that the stockholder released first mortgages upon the petitioner's real estate for the purpose of allowing it to give a clear title to the purchasers. The petitioner urges that the release of the first mortgages should be treated as a voluntary contribution to capital and the distribution of the purchase-money notes and mortgages as being wholly a liquidating dividend. See Virginia Beach Golf Course Annex Corp. v. Commissioner, 23 B. T. A. 1170. But the parties treated the transaction on the books of the corporation as creating a debt which was paid, and the Board has so found the facts. There is support for the finding, and we must accept it. To the extent that the purchase-money notes and mortgages paid this debt, the corporation is in the same position as if it had sold a portion of them for cash and used the cash to pay its debt. See Batcheller v. Commissioner, 19 B. T. A. 1050. On this disposal of the mortgage notes at face value in the amount of the debt, it realized a profit which it must return for taxation. On this basis, we understand the petitioner to admit a deficiency of $2,957.09, which the Commissioner does not question.

Accordingly, the order of the Board is reversed, and the cause remanded for entry of an order of deficiency in the amount stated.