## BOCA RATONE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5821.

Circuit Court of Appeals, Third Circuit.

Oct. 7, 1936.

Bernhard Knollenberg, of New York City (Lord, Day & Lord and Harry J. Rudick, all of New York City, of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Francis I. Howley, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from an order of the Board of Tax Appeals deciding that the petitioner was liable for a deficiency of $3,153.38 in its income tax return for 1929.

Prior to that year the petitioner had sold nine lots of land in Florida for $78,750, which was to be paid in installments. Title to the land was retained as security but the purchasers took immediate possession of it. The land had cost the petitioner $54,243.99, and if all the installments had been paid it would have realized a profit of $24,506.01. The purchasers paid $39,375 on the contract, and the petitioner, having elected to report the profit in its income tax return on the installment basis, reported a profit of $12,253. This figure was reached by taking the percentage of payments made ($39,375) that the total profit which would have been realized ($24,506.01) bore to the total contract price ($78,750). In other words, one-half of the purchase price was paid and one-half of the profit was realized.

In 1929 the purchasers defaulted on their obligations. Thereupon the petitioner and the purchasers entered into certain agreements whereby "the petitioner released the purchasers from further obligation for unpaid installments of the purchase price and, in addition paid them $50 in cash for each lot, being $450 in all; and the purchasers surrendered their equity in the property to the petitioner and returned possession thereof to the petitioner." It was stipulated that the value of the land "was, at the time of repossession, less than $27,122.00," which represents the approximate cost of the land to the petitioner at that time. Though at the end the petitioner had the same land and $39,375 in addition, less the taxes paid on $12,253 profits, previously reported, and the $450 paid on repossession, the net result of the transaction to it, due to the extreme depression of land values in Florida, was a net loss, for the subtraction of the $12,253 profits and $450 from $39,375 leaves a balance of $26,672. This added to $27,122, the value of the land at that time, amounts to $53,794. This is $449.99 less than the

petitioner paid for the land originally. That is, the petitioner actually lost this amount on the transaction together with the interest on the money invested and the taxes paid on the land.

The petitioner, however, in its income tax return for 1929 did not report either a taxable profit or a deductible loss as a result of its repossession of the land.

Notwithstanding this, the respondent ruled that the petitioner realized a taxable income of $26,672 from the repossession. This figure was arrived at by his determination that the entire amount of the installment payments of $39,375 received by the petitioner became a taxable gain on repossession of the land and the $26,672 represented the difference between the $39,375 paid, and the $12,253 profit previously reported plus the $450 paid to the purchasers on repossession.

The petitioner says that no taxable gain was realized and relies on section 44 (d) of the Revenue Act of 1928 (26 U.S.C.A. § 44 (d) and note), which provides that: "Gain or loss upon disposition of installment obligations. If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

Application of these provisions to the facts of this case shows that the petitioner did not make a profit. The face value of the installment obligation at the time of the default in making further payments was $39,375, one half of the original purchase price of the land; the other half having been paid. The income which would have been returnable if the obligation had been satisfied in full was $12,253, which is the amount of the tax returned on the first half of the purchase price. The basis of the obligation is the excess of the face value of the obligation, $39,375, over an amount equal to the income, $12,253, which would have been returned if the obligation had been satisfied in full. In other words, this is $39,375 less $12,253, or $27,122, which was the amount realized. It was stipulated that the value of the land at the time of repossession was less than $27,122. The statute provides that gain or loss is the difference between the basis of the obligation and the amount realized. Here the amount realized, less than $27,122, is less than the basis of the obligation $27,122. Consequently there can be no gain, but loss, if the statute controls this case.

We have considered the obligation which was outstanding at the time of the default. If we were to double all the figures and consider the whole transaction, the result would be the same.

The Commissioner and the Board say that the case is controlled by Article 353 of Regulations 74, as amended December 23, 1932, though the article, before and after the amendment, was promulgated to carry out the provisions of the statute.

There are two conditions necessary to bring this case under section 44 (d) of the Revenue Act of 1928: (1) The obligation must be an installment obligation, and (2) it must have been satisfied at other than its face value.

It is admitted that the obligation was an installment obligation, but the Commissioner says, and the Board decided, that the obligation was not satisfied at other than its face value. The Board said that the language of the statute did not "indicate that it was the purpose of the provision to treat an installment obligation as 'satisfied at other than its face value' when, as in the instant case, the sale was not consummated because the purchasers had defaulted in their payments and by agreement they were released from further payments." The answer to this statement depends upon whether or not what was done in this case in the way of settlement "satisfied" the installment obligation within the meaning of the statute.

Admittedly there was an installment obligation of $39,375. The petitioner released and discharged the purchasers from this obligation in consideration of the surrender by them of the possession and equitable ownership of the land on the payment to them by the petitioner of $450. That is, the petitioner secured the possession and equitable ownership of the land and the purchasers obtained $450 and release and discharge from their obligation. "Satisfaction" in legal phraseology "imports a re-

lease and discharge of the obligation in reference to which it is given." Jersey Island Dredging Co. v. Whitney, 149 Cal. 269; 86 P. 509, 511, 691. "To satisfy" means "to answer or discharge, as a claim, debt, legal demand or the like." Webster's New International Dictionary. When the transaction was over, the purchasers were released and discharged from the obligation. It was at an end, and this within the meaning of the statute constituted a satisfaction of the obligation.

This was made "at other than face value" of the obligation. The face value was $39,375, and this was "satisfied" by the petitioner for $450, and the equitable ownership of the land which was worth less than $27,122. The satisfaction was, therefore, "at other than the face value" of the obligation. This is practically admitted in paragraphs 4 and 5 of the stipulation, which read as follows:

"4.. In 1929 the purchasers defaulted in their obligations and negotiations were entered into which resulted in agreements executed in 1929 whereby the petitioner released the purchasers from further obligation for the unpaid installments of the purchase price, and, in addition, paid them $50.00 in cash for each lot, being $450 in all; and the purchasers surrendered their equity in the property to the petitioner and returned possession thereof to the petitioner.

"5. The aggregate value of the said nine lots so repossessed by the petitioner in 1929 was, at the time of said repossession, less than $27,122.00."

The facts of this case bring it squarely within the terms of section 44 (d) of the Act of 1928, and not within Article 353 of Regulations 74, which as amended December 23, 1932, among other things provides that: "If the vendor had retained title to the property and the purchaser defaults in any of his payments, and the vendor repossesses the property by agreement or process of law, the difference between (1) the entire amount of the payments actually received on the contract and retained by the vendor and (2) the sum of the profits previously returned as income in connection therewith and an amount representing what would have been a proper adjustment for exhaustion, wear and tear, obsolescence, amortization, and depletion of the property during the period the property was in the hands of the purchaser had the

sale not been made, will constitute gain or loss, as the case may be, to the vendor for the year in which the property is repossessed, and the basis of the property in the hands of the vendor will be the original basis at the time of the sale. If the vendor had previously transferred title to the purchaser, and the purchaser defaults in any of his payments and the vendor reacquires the property, such reacquisition shall be regarded as a transfer by the vendor, in exchange for the property, of such of the purchaser's obligations as are applied by the vendor to the purchase or bid price of the property. Such an exchange will be regarded as having resulted in the realization by the vendor of gain or loss, as the case may be, for the year of reacquisition, measured by the difference between the fair market value of the property reacquired and the basis in the hands of the vendor of the obligations of the purchaser which were applied by the vendor to the purchase or bid price of the property. The basis in the hands of the vendor of the obligations of the purchaser so applied will be the excess of the face value of the obligations over an amount equal to the income which would be returnable were the obligations satisfied in full. The fair market value of the property reacquired shall be presumed to be the amount for which it is bid in by the vendor in the absence of clear and convincing proof to the contrary. If the property reacquired is subsequently sold, the basis for determining gain or loss is the fair market value of the property at the date of reacquisition."

The Board in its effort to sustain the Regulations builds up or tries to build up a distinction between a situation in which a vendor surrenders possession, but retains title for his protection and one in which he parts with his title, but takes a mortgage on the property for his protection. A dissent from the decision of the Board was filed by five of its members, Messrs. Turner, Trammell, Arundell, McMahon, and Leech. Of this distinction Mr. Turner, who wrote the dissent, said: "The majority opinion, it seems to me, loses itself in an effort to distinguish between a sale of property where title passes and a mortgage is given as security for the purchasers' obligations and a sale where bare legal title is retained as such security. Section 44 (d) of the statute makes no such distinction, but applies to installment obligations arising from sales of either type, and, ac-

cording to my view, contains nothing which would justify the distinction which the majority opinion attempts to draw."

We agree with this dissent. Taxation is a practical matter. The reasoning of the Board in an effort to justify the distinction made in the Regulations is too technical, refined, and legalistic. The Regulations as to this distinction exceed the provisions of the Statute and are invalid. If there is any doubt about this, it should be resolved in favor of the petitioner. Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211; Crocker v. Malley, 249 U.S. 223, 253, 39 S.Ct. 270, 63 L.Ed. 573, 2 A. L.R. 1601; United States v. Field, 255 U. S. 257, 262, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461.

The order of redetermination of the Board and the determination of the Commissioner are set aside, and the case remanded to the Board for further proceedings in accordance with this opinion.