### UNITED STATES v. EVERSMAN.
### No. 9197.

Circuit Court of Appeals, Sixth Circuit.

Feb. 11, 1943.

A. A. Armstrong, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Harry Marselli, all of Washington, D. C., Donald C. Miller, of Cleveland, Ohio, and Gerald P. Openlander, of Toledo, Ohio, on the brief), for appellant.

Merwyn G. Leatherman, of Toledo, Ohio (Walter A. Eversman, Merwyn G. Leatherman, and Williams, Eversman & Morgan, all of Toledo, Ohio, on the brief), for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The Government appeals from a judgment of the district court awarding appellee a refund, with interest, of a collected income tax deficiency assessment for the year 1931.

Appellee is administrator of the estate of his mother, Elizabeth Eversman, deceased, and is her sole heir at law and next of kin. Mrs. Eversman and her son owned, in equal undivided interests, a parcel of improved real estate known as the Wagner property, situated in the retail business district of Toledo, Ohio. She had acquired her half interest in 1905, and he had become the owner of the other half interest in August 1913. The value of Mrs. Eversman's half interest in the property on March 1, 1913, was $87,500. In her annual income tax returns filed during the period from March 1, 1913, to December 31, 1930, she claimed a uniform annual depreciation of $750 on her undivided half interest in the Wagner Building.

On June 8, 1931, Mrs. Eversman and her son executed and acknowledged a contract of sale in writing, dated June 1, 1931, by which they agreed to sell and convey the Wagner property to four members of the Kobacker family.

The consideration agreed to be paid by the buyers totaled $175,000; whereof $20,-000 was acknowledged to have been paid in cash upon the execution of the agreement, $5,000 was to be paid on December 1, 1931, and additional instalments of $5,000 each were payable on the first days of June and December of each of the calendar years from 1932 to 1936, both inclusive; and the remaining $100,000 of the purchase price was payable on June 1, 1937. It was provided that monthly instalments of interest on the deferred payments should be paid at the rate of six per cent per annum; and the buyers were granted the privilege of payment of any deferred payment at any time prior to its due date. It was provided that if the buyers should pay to the sellers, on or before September 21, 1931, an additional sum of $20,000 for application upon the purchase price, the last instalment payment would be reduced from $100,000 to $65,000; thereby, in such event, lowering the total consideration from $175,000 to $160,000.

The buyers were given immediate possession, but the title to the property was retained by the sellers, who agreed upon re-

ceipt of payment of the full purchase price, to convey the property to the buyers, their heirs and assigns, by a good and sufficient deed of special warranty. Provision was made that the buyers should at all times, while the contract was in force, pay all taxes and assessments, maintain the premises in good condition and repair, keep the building and improvements insured, and indemnify the sellers against all loss and damage resultant from the use and occupancy of the premises by the buyers.

The contract of sale contained this important provision: "Buyers shall have the right at any time prior to June 1, 1934, upon six months' notice, to cancel and annul this contract, provided at the time of such cancellation and annulment they shall have paid sellers on the principal of the purchase price not less than Forty Thousand Dollars ($40,000) and shall not then be in default of any other payment of principal or interest or in default of the performance of any other term or condition of this contract."

Pursuant to their right under the foregoing clause, the Kobackers, on June 27, 1931, notified Mrs. Eversman and her son, Walter A. Eversman, of their intention to cancel and annul the contract of sale, such cancellation to become effective six months after receipt of the notice. The premises were duly surrendered by the Kobackers to the Eversmans at the expiration of the six months' period on December 27, 1931, at which time the Eversmans had received during the year 1931, on account of the contract of sale, a total of $40,000 in four separate payments made by the Kobackers.

Due to the insolvency and liquidation of several large banks in the city of Toledo, and to the general economic depression prevailing, the Wagner property had, at the time of its repossession by the Eversmans on December 27, 1931, a total fair market value not in excess of $90,000. Obviously, the value of Mrs. Eversman's half interest therein did not, at that time, exceed $45,000.

Mrs. Eversman did not include as a part of her taxable income for 1931 the $20,000 which she had received as her half of the $40,000 paid during 1931 by the Kobackers, as buyers of the Wagner property, but she did attach to her income tax return for that year a statement setting forth a full history of the transactions which have been narrated.

Mrs. Eversman died on August 25, 1933; and, after her death, the Commissioner of Internal Revenue assessed a deficiency tax against her estate, by reason of his ruling that there should be included as part of her taxable income for 1931 the sum of $20,000 which she had received from the total $40,000 paid by the Kobackers. The appellee paid the deficiency assessment, together with accumulated interest, and filed an appropriate claim for refund, alleging that the assessment was illegal in that his decedent, Mrs. Eversman, had realized no taxable gain in 1931 from the sale and subsequent repossession of the Wagner property; but, on the contrary, had in fact sustained a loss.

The Commissioner disallowed the claim for refund, pursuant to the provisions of Article 353 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, as amended by Treasury Decision 4360, XII-1 Cum.Bull. 116-117 (1933). [See footnote for pertinent Treasury Regulations and amendment.][1]

<hr />

[1] Treasury Regulations 74, promulgated under the Revenue Act of 1928: Art. 352. Sale of real property involving deferred payments.—Under Section 44 deferred-payment sales of real property fall into two classes when considered with respect to the terms of sale, as follows:

(1) Sales of property on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made do not exceed 40 per cent of the selling price.

(2) Deferred-payment sales not on the installment plan, that is, sales in which the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable year in which the sale is made exceed 40 per cent of the selling price.

Art. 353. Sale of real property on installment plan.—In transactions included in class (1) in article 352 the vendor may return as income from such transactions in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the property is paid for bears to the total contract price.

If for any reason the purchaser defaults in any of his payments, and the vendor returning income on the installment basis repossesses the property, the entire amount received in installment payments

After disallowance by the Commissioner of the refund claim, this suit was instituted; and, following a trial on stipulation of facts supplemented by open court testimony, the district court concluded as a matter of law that: (1) the contract of June 1, 1931, was for the sale of real property and was an instalment obligation within the meaning of Section 44(b) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 364, (2) the cancellation of the agreement of June 1, 1931, and the return of the Wagner property to the sellers constituted a satisfaction of the instalment obligation of June 1, 1931, at other than its face value, within the meaning of Section 44(d) of the Revenue Act of 1928, and its provisions apply and control; [See footnote for pertinent provisions of Section 44, 26 U.S.C.A. Int.Rev.Acts, page 363.][2] (3) irrespective of the provisions of Section 44 of the Revenue Act of 1928,

and retained by the vendor, less the sum of the profits previously returned as income and an amount representing proper adjustment for exhaustion, wear and tear, obsolescence, amortization, and depletion of the property while in the hands of the purchaser, will be income of the vendor for the year in which the property is repossessed, and the basis of the property in the hands of the vendor will be the original basis at the time of the installment sale.

If the vendor chooses as a matter of consistent practice to return the income from installment sales on the straight accrual or cash receipts and disbursements basis, such a course is permissible, and the sales will be treated as deferred-payment sales not on the installment plan.

T. D. 4360, XII-1 Cum. Bull. 116-117 (1933), amended the second paragraph of Article 353 of Regulations 74 to read as follows:

If the vendor had retained title to the property and the purchaser defaults in any of his payments, and the vendor repossesses the property by agreement or process of law, the difference between (1) the entire amount of the payments actually received on the contract and retained by the vendor and (2) the sum of the profits previously returned as income in connection therewith and an amount representing what would have been a proper adjustment for exhaustion, wear and tear, obsolescence, amortization, and depletion of the property during the period the property was in the hands of the purchaser had the sale not been made, will constitute gain or loss, as the case may be, to the vendor for the year in which the property is repossessed, and the basis of the property in the hands of the vendor will be the original basis at the time of the sale. If the vendor had previously transferred title to the purchaser, and the purchaser defaults in any of his payments and the vendor reacquires the property, such reacquisition shall be regarded as a transfer by the vendor, in exchange for the property, of such of the purchaser's obligations as are applied by the vendor to the purchase or bid price of the property. Such an exchange will be regarded as having resulted in the realization by the vendor of gain or loss, as the case may be, for the year of reacquisition, measured by the difference between the fair market value of the property reacquired and the basis in the hands of the vendor of the obligations of the purchaser which were applied by the vendor to the purchase or bid price of the property. The basis in the hands of the vendor of the obligations of the purchaser so applied will be the excess of the face value of the obligations over an amount equal to the income which would be returnable were the obligations satisfied in full. The fair market value of the property reacquired shall be presumed to be the amount for which it is bid in by the vendor in the absence of clear and convincing proof to the contrary. If the property reacquired is subsequently sold, the basis for determining gain or loss is the fair market value of the property at the date of reacquisition.

[2] Revenue Act of 1928, c. 852, 45 Stat. 791. "§ 44. Installment Basis. (a) Dealers in Personal Property. Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price.

"(b) Sales of Realty and Casual Sales of Personalty. In the case (1) of a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year), for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 40 per centum of the selling price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on

a loss resulted to the defendant upon the repossession of property, worth then approximately $30,000 less than its depreciated March 1, 1913, value, which more than offset any gain to the decedent through the receipt of $20,000 cash in 1931; and that (4) no taxable income was realized by Elizabeth Eversman in 1931 from the transaction with Joseph I. Kobacker and his associates.

The Government insists that the money received by appellee's decedent, Mrs. Eversman, in the transactions involved in this suit constituted income realized by her and taxable to her within the broad sweep of the definition of gross income contained in Section 22(a) of the Revenue Act of 1928, Chapt. 852, 45 Stat. 791, 26 U.S.C.A. Int. Rev.Acts, page 354.[3] The contention is that Section 44(b) of the Revenue Act of 1928 applies only to an instalment sale extending over more than one taxable year, while in the controversy at bar the entire transaction was consummated within one taxable year. It is contended further that the decedent, Mrs. Eversman, did not elect to bring herself within the coverage of Section 44(b) of the statute, or to report income thereunder; and that the provisions of the section are applicable only where such election is expressly made by the taxpayer. Finally, it is urged that the provisions of Section 44(d) of the statute are applicable only where an instalment seller has previously elected to report income under Section 44(a) or Section 44(b).

It is conceded by the Government that if the formula prescribed in Section 44(d) is applicable, the decedent had no taxable gain from the transaction, because the value of her property at the time of repossession was less than her basis; but it is insisted that Section 44(d) cannot properly be applied, because the decedent did not bring herself within the provisions of Section 44(b), and for the further reason that the instalment obligation was not satisfied "at other than its face value," inasmuch as the contract was cancelled and annulled in accordance with the right of cancellation expressly contained in the contract.

The language of Section 44(d) is clearly to the effect that, if an instalment obligation is satisfied at other than its face value, or otherwise disposed of, the taxpayer is entitled to compute profit or loss under the section. Mrs. Eversman undoubtedly held an instalment obligation, which was "satisfied" or "disposed of." Her satisfaction and disposition of it was "at other than its face value." The face value of that obligation was $175,000, which was satisfied by a payment of $40,000 and the surrender of the property, which, at the time of surrender, had a value not exceeding $90,000.

The argument of the Government has been rejected in Boca Ratone Co. v. Commissioner of Internal Revenue, 3 Cir., 86 F.2d 9, where it was held that only two conditions are necessary to bring a case within Section 44(d) of the Revenue Act of 1928: namely, (1) the obligation must be an instalment obligation, and (2) it must have been satisfied at other than its face value. There, as here, when the transaction was over, the purchasers had been

---

the basis and in the manner above prescribed in this section. As used in this section the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made. * * *

"(d) Gain or Loss upon Disposition of Installment Obligations. If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or dis-

position. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full."

[3] Revenue Act of 1928, c. 852, 45 Stat. 791. "§ 22. Gross Income. (a) General Definition. 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

released and discharged with finality and their obligation satisfied within the meaning of the statute. The facts of this case bring it as squarely as did the facts of the Boca Ratone case within the terms of Section 44(d) of the Revenue Act of 1928; and not, as is contended by the Government, within the scope of Article 353 of Regulations 74. See, also, Wilcox v. Henricksen, D.C., 31 F.Supp. 700. Compare Walker v. Thomas, 5 Cir., 119 F.2d 58.

■ We find no force in the argument that Mrs. Eversman was required to make an express election in her tax return, in order to receive the benefits available to her under Sections 44(b) and 44(d) of the statute. The Government would have us read into the statute requirements not found there. No provision to the effect that the taxpayer must have made an express election in a previous taxable year is found in the statute. While Mrs. Eversman, in her 1931 income tax return, did not expressly state her election to report under Section 44(b) the $20,000 received from the property sale during that year, she did file, with her return, a detailed report of the sale and repossession of the Wagner property. The course pursued by her evidenced a manifest belief that the transaction which she had described entailed no additional tax liability. The Treasury Department was put in possession of all the relevant facts. Her failure to adopt fruitless ritualistic measures should not foreclose the allowance to her of all lawful benefits under the statute.

■ The requirement for applicability of Section 44(b) of the Revenue Act of 1928 is only that initial payments shall not exceed forty per cent of the selling price. Here, the initial payments made by the buyers aggregated $40,000, which was materially below that percentage. Cancellation of a contract is certainly not the equivalent of payment of obligations under it.

There appears no valid reason for holding Section 44(b) of the statute inapplicable from the mere fact that the sales contract was executed and terminated within the same taxable year. See Duram Bldg. Corporation v. Commissioner of Internal Revenue, 2 Cir., 66 F.2d 253.

Doyle v. Commissioner of Internal Revenue, 2 Cir., 110 F.2d 157, 130 A.L.R. 989, and Virginia Iron, Coal & Coke Co. v. Commissioner of Internal Revenue, 4 Cir., 99 F.2d 919, cited by the Government as supporting the contention that the $20,000 cash received by Mrs. Eversman in 1931 constituted part of her taxable income, are not deemed in point; for, in both cases, the contracts were executory and involved a single rather than two separate transactions. In the Doyle case, the seller did not relinquish possession of the real estate and the payments made constituted earnest money paid under an executory contract to sell real estate. In the Virginia Iron case, only an unexercised option to buy was involved.

In view of our conclusion that the district court correctly applied the provisions of Sections 44(b) and 44(d) of the Revenue Act of 1928 to the factual situation revealed in the record, there is no necessity for discussion of the additional holding below that, even if Section 44 were not applicable, appellee's decedent received no taxable income from the real estate transaction in 1931.

The judgment of the district court is affirmed.