**Minos D. MILLER, Sr.**

v.

**Chester A. USRY, District Director of Internal Revenue, New Orleans District, United States Treasury Department.**

**Civ. A. 6071.**

United States District Court
W. D. Louisiana,
Lake Charles Division.

March 7, 1958.

Ruth Loyd Miller, Jennings, La., for plaintiff.

T. Fitzhugh Wilson, U. S. Atty., Meredith T. Holt, Asst. U. S. Atty., Shreveport, La., for defendant.

HUNTER, District Judge.

Plaintiff seeks to recover $2,460.88, together with interest, on account of an alleged over-assessment of income tax for the calendar year ending December 31, 1953. The facts are these:

(1) Minos D. Miller, Sr. is a resident of the City of Jennings, Parish of Jefferson Davis, State of Louisiana.

(2) On April 4, 1952, Minos D. Miller, Sr. sold a one-fourth (¼th) interest in and to a certain 881 acre tract of land located in Jefferson Davis Parish to his son, Minos D. Miller, Jr., for a total price of $16,000, of which $4,000 was paid in cash and the balance of $12,000 was represented by a note payable in 20 annual installments of $600 each, which was secured by a mortgage on the property conveyed. Said note carried a rate of interest of 4% per annum, payable annually. A true copy of the deed of sale is in evidence as Exhibit P-1.

(3) This sale was reported by Minos D. Miller, Sr. as an installment sale in his federal income tax return for the calendar year 1952, and income tax was paid on the cash payment received in 1952 of $4,000. In addition Minos D. Miller, Sr. paid income taxes for the calendar year 1952 on the first installment of $600 plus $240 interest, all of which was collected during 1952. Minos D. Miller, Sr. kept his personal records and paid his taxes on a cash disbursements and receipts basis.

(4) On December 22, 1953, by an Act of Donation dated and recorded in the records of Jefferson Davis Parish on that same date, Minos D. Miller, Sr. executed an authentic act in favor of his son, Minos D. Miller, Jr., which is in evidence as Exhibit P-2.

In said authentic act of donation the Clerk of Court in and for the Parish of Jefferson Davis was directed by the tax-

payer to cancel the mortgage of April 4, 1952, and this he did.

Minos D. Miller, Sr. recited this information in substance in his federal income tax return for the calendar year 1953, which is in evidence as Exhibit P-5, wherein he stated (see last page of P-5):

*"Notice to Director:*

"No income was received in 1953, nor will income be received in the future on Installment Sale of ¼ interest in Miller Riverside Farm made in 1952 by me to my son, Minos D. Miller, Jr.

"On December 22, 1953, I did donate to him, by Act of Donation duly notarized at Jennings, La., the note secured by Mortgage arising from this transaction, which represents a donation of my cost-basis of the note computed as follows:

|  | Face Value | Gain Not Realized | Cost Basis |
|---|---|---|---|
| Total Sale | $16,000.00 | $11,485.00 | $4,515.00 |
| Less | 4,600.00 | 3,301.93 | 1,298.07 |
| Balance at time of donation | $11,400.00 | $ 8,183.07 | $3,216.93" |

(5) For the calendar year 1953, Minos D. Miller, Sr. filed a federal gift tax return declaring a value of $11,955 on the aforementioned gift to Minos D. Miller, Jr. and paid a federal gift tax in the sum of $1,259 (Exhibit P-6).

(6) For the calendar year 1953, Minos D. Miller, Jr. filed the required information return, informing the United States Government of the gift (Exhibit P-7).

(7) The fair market value of the note on the day of its "disposition" (as contended by the Government), and its "satisfaction" (as contended by the plaintiff) was $11,400, which was the balance of the principal remaining due.

(8) On October 24, 1956, Minos D. Miller, Sr. paid the amount claimed by the Government as income taxes due because of the "disposition" (as contended by the Government) and its "satisfaction" (as contended by the plaintiff) of the installment obligation aforemention-ed. This amounted to the sum of $2,127.60 tax, plus $333.28 interest, or a total of $2,460.88.

(9) On October 31, 1956, Minos D. Miller, Sr. submitted a claim for refund; the registered Notice of Disallowance of the claim was received by Minos D. Miller, Sr. on March 5, 1957, and this suit was instituted on March 28, 1957.

(10) When Minos D. Miller, Sr. donated the note to his son, who was the maker of the note, he marked across the face of the note "Canceled in Full". The note was paraphed "Ne Varietur" by the notary public before whom the authentic Act of Donation was executed for identification with said Act of Donation. The said Act of Donation also directed the Clerk of Court in and for Jefferson Davis Parish to cancel the mortgage of April 4, 1952, and the mortgage of April 4, 1952 was actually canceled from the records on December 22, 1953. On that date the Deputy Clerk of Court marked the note "canceled" after he canceled the vendor's lien from the records on the same date.

Statute and Regulations Involved
Internal Revenue Code of 1939:

"§ 44. Installment basis.

\*    \*    \*    \*    \*    \*

"(d) *Gain or loss upon disposition of installment obligations.* If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and *(1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition.* (Emphasis mine.) Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the in-

stallment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment. If an installment obligation is distributed by one corporation to another corporation in the course of a liquidation, and under section 112(b) (6) no gain or loss with respect to the receipt of such obligation is recognized in the case of the recipient corporation, then no gain or loss with respect to the distribution of such obligation shall be recognized in the case of the distributing corporation." 26 U.S.C.1952 ed., Sec. 44.

Treasury Regulations 118 promulgated under the Internal Revenue Code of 1939:

"Sec. 39.44–5. *Gain or loss upon disposition of installment obligations.* (a) The entire amount of gain or loss resulting from the disposition or satisfaction of installment obligations, computed in accordance with section 44(d), is recognized under the Internal Revenue Code unless the disposition is within one of the exceptions made by the Code. Such an exception is provided in section 44(d) with respect to distributions under section 112(b) (6), and in section 112(b) (4) and (5) with respect to exchanges."

## Contentions of The Respective Parties

The Commissioner of Internal Revenue has determined that in making the gift of the installment obligation and in having the note canceled, the taxpayer has disposed of the obligation otherwise than by sale or exchange, and accordingly, is taxable to the extent of the gain between the basis of the obligation and the fair market value of the obligation at the time of disposition. See Section 44(d) (2), supra. If this contention is sustained, plaintiff cannot prevail here.

It is the taxpayer's position that Section 44(d) (1) is applicable. There are two conditions necessary to bring this case under Section 44(d) (1) of the Revenue Code of 1939:

(1) The obligation must be an installment obligation, and

(2) It must have been satisfied at other than its face value.

The Government concedes that the taxpayer did not realize any actual or material gain from the transaction. It is also clear that the taxpayer did not derive any advantages taxwise from the transaction. Admittedly, there was an installment obligation. Whether there was "satisfaction at other than face value" depends on whether or not what was done in this case "satisfied" the installment obligation within the meaning of the statute.

## Discussion

Neither the regulations nor the statute specifically define the terms "satisfaction", "transmission", "distribution", and "disposition." If they did, this suit would probably not have arisen.

Section 44(d) was tailored to plug a leak in the tax structure whereby taxpayers, through corporate schemes, would transfer installment obligations to corporations of their own creation in order to create beneficial tax advantages. It was aimed at these corporate transfers whereby valid and existing obligations were "disposed of other than by sale or exchange." We doubt that 44(d) (2) should be applied where there has been

no actual, or real, or material gain to the taxpayer.[1]

In the instant case the taxpayer did not dispose of the obligation within the historical meaning of Section 44(d) (2), because he did not transfer an existing and enforceable installment obligation. The obligation was not distributed. It was not transmitted. It was not sold, nor was it otherwise disposed of. It was canceled and satisfied.

If the taxpayer had transferred the note to his son without cancellation, the legal situation would be strikingly different, for then the obligation would have still been outstanding, unsatisfied and negotiable. It would have been enforceable as against the maker by anyone holding it in due course, and in such a case, Section 44(d) (2) would be applicable. The same would be true if the taxpayer had transferred the note without cancellation as a gift to a third person. There are many other ways that the taxpayer could have transferred or disposed of the obligation and have placed himself within the intent of Section 44(d) (2). But here, the note was marked "canceled in full" and paraphed for identification with the Act of Donation which directed the Clerk of Court to cancel the mortgage. On that same date, the mortgage was duly canceled. The minute the note was canceled the obligation was terminated and satisfied. The Government is being unrealistic if they think for one instant that after the note was "canceled in full" and paraphed "Ne Varietur" by the notary public before whom the authentic act of donation was executed for identification with said act, the taxpayer or any other person could have collected one cent in payment of the obligation. The note was as of the instant of its cancellation, nothing but a worthless scrap of paper, and the obligation originally raised by it was totally and irrevocably satisfied. Section 44(d) (1) literally applies and governs here.

The cancellation of the note terminated and extinguished the obligation. The Government completely disregards that decisive fact.

Exhibit P–9 was a negotiable instrument, and under N.I.L., Section 119, a negotiable instrument is discharged: "(3) By the intentional cancellation thereof by the holder;" also, it has been held that:

"Intentional cancellation by the holder is one of the previously enumerated statutory methods of discharging a negotiable instrument. Such cancellation of the instrument discharges the maker or the party who is primarily liable thereon. This is true even though it is done gratuitously and without consideration unless there is fraud or mistake." 8 Am.Jur. p. 436, Sec. 781.

"When the maker of a negotiable instrument lawfully cancels it before maturity, his liability upon it is extinguished, and cannot be revived without his consent. It is immaterial whether the cancellation is by destroying the instrument, or by writing or stamping words or lines in ink upon its face, provided the instrument, in the condition in which he puts it, unequivocally shows that it has been canceled." District of Columbia v. Cornell, 130 U.S. 655, 9 S.Ct. 694, 32 L.Ed. 1041, 1042.

That cancellation of an installment obligation constitutes "satisfaction" within the meaning of Sec. 44(d) was exhaustively treated in Boca Ratone Co. v. Commissioner of Internal Revenue, 3 Cir., 86 F.2d 9 and United States v. Eversman, 6 Cir., 133 F.2d 261. In Boca it was stated [86 F.2d 10]:

" 'Satisfaction' in legal phraseology 'imports a release and discharge of the obligation in reference to which it is given.' * * * 'To satisfy' means 'to answer or dis-

1. First National Bank of Greeley, Colorado v. U. S., 10 Cir., 86 F.2d 938; Eisner v. Macomber, 252 U.S. 189, 40 S. Ct. 189, 64 L.Ed. 521; Hirsch v. Commissioner of Internal Revenue, 7 Cir., 115 F.2d 656; Bowers v. Kerbaugh-Empire Co., 271 U.S. 170, 46 S.Ct. 449, 70 L.Ed. 886.

charge, as a claim, debt, legal demand or the like.' Webster's New International Dictionary. When the transaction was over, the purchasers were released and discharged from the obligation. It was at an end, and this within the meaning of the statute constituted a satisfaction of the obligation."

The installment obligation here was satisfied at other than its face value. Its face value was $11,400. It was satisfied by the payment of Minos D. Miller, Jr. of $4,600 during 1952 "on which income taxes were properly paid by Minos D. Miller, Sr.", and by its cancellation as to the balance due.

Here, as in Eversman, supra, and Boca, supra, when the transaction was over, the purchaser had been released and discharged with finality and his obligation satisfied within the meaning of the statute. The facts of the case bring it squarely within the terms of Section 44(d) (1) of the Revenue Code of 1939, and not as is contended by the Government within the scope of Section 44(d) (2).

The Government, in its brief, quoting at length from cases where taxpayers have disposed of installment obligations through various channels, demonstrates time and again its refusal to recognize the facts of the instant case in applying the law. First, they rely on I.T. 3293. There, a husband held outstanding installment obligations of third persons, and transferred them by gift to his wife. At the conclusion of the transaction the installment obligations remained alive and enforceable. There was not the slightest suggestion that they had been satisfied and extinguished.

Second, they rely on Revenue Ruling 55–157. There, the taxpayer sold real property to an educational organization, contributions to which are deductible under Sec. 23(o) of the I.R.C. of 1939. The Taxpayer elected to report his profit on the installment basis, and each time a note fell due he would then donate the note to the educational organization, taking an allowable deduction to the extent

provided. It was obvious that the taxpayer in that case was attempting to have his cake and eat it too, for he was attempting to take a double tax advantage.

Petitioner is entitled to judgment, as prayed for. Appropriate decree should be presented.