WIGGINTON, Acting Chief Judge.
Plaintiff in a mortgage foreclosure proceeding has appealed the final decree by which it was granted an equitable lien against the several parcels of real estate on which foreclosure was sought, and ordering that all proceeds derived from the enforcement of plaintiff’s equitable lien be paid to appellee intervenor for application on the indebtedness owed intervenor by plaintiff’s assignor.
Florida Homecraft of St. Petersburg, Inc., a corporation, was the original mortgagee and-pay-ee -of mortgages and notes encumbering eight separate parcels of land situate in .Alachua County, Florida. Inter-venor Henrietta. Ebbage Harris, and her deceased husband, Charles R. Harris, entered into-a written contract with Florida Home-craft on March 23, 1960, by which they loaned to Florida Homecraft the sum of $25,835.00. This loan was for a period of one year and bore interest at the rate of eight per cent per annum. As security for the loan Florida Homecraft agreed that the several notes and mortgages owned by it and encumbering the eight parcels of land mentioned above would be posted on the corporation books as collateral security for the loan made to it by the Harrises. The contract provided that the notes and mortgages were not being sold but were redeemable by Florida Homecraft upon payment in full of the amount of the loan, plus interest, and without further penalty. The notes and mortgages described in the contract were neither formally assigned, nor was actual possession of them delivered to the Harrises. The original mortgagors were never notified that the indebtedness owed by them and evidenced by their notes and mortgages had been pledged as collateral security by Florida Homecraft to the Harrises. During the one year period of the loan, and at a time when each of the notes and mortgages was in default, Florida Homecraft sold and assigned them to .a third person, which notes and mortgages by subsequent assignments finally became vested in plaintiff, Guaranty Mortgage and Insurance Company, a corporation. Neither Florida Homecraft’s original assignee, nor any of the subsequent assignees including the plaintiff herein, had either actual or constructive knowledge that the notes and mortgages assigned to them had theretofore been pledged by Florida Homecraft as collateral security for the indebtedness owed by it to -the Harrises.
Plaintiff, who is appellant in this court, instituted suit in the Circuit Court of Ala-chua County to foreclose the mortgages held by it through successive assignments from *452 the original mortgagee, Florida Homecraft. Appellee, Henrietta Ebbage Harris, intervened in the cause and asserted her claim to the indebtedness owed by the several mortgagors by virtue of the written pledge made to her by Florida Homecraft prior to its assignment of the mortgages to plaintiff’s assignor. After trial and final hearing the chancellor entered a decree setting forth his findings of fact and conclusions of law. He found, among other things, that the notes and mortgages sought to be foreclosed, and the indebtedness evidenced thereby, were validly pledged by the owner, Florida Homecraft, to the intervenor Henrietta Ebbage Harris as security for the loan made by the latter and her deceased husband. The court further found that at the time the notes and mortgages were first assigned by Florida Homecraft to its immediate assignee, each was in default for failure of the mortgagors to make the periodic payments thereon in accordance with the terms of the instruments and therefore the assignee took title to the mortgages subject to the equitable interest held by the in-tervenor, Henrietta Ebbage Harris, as pledgee of the indebtedness evidenced and secured by the notes and mortgages in suit ; that plaintiff Guaranty Mortgage and Insurance Company, the ultimate assignee, occupied the same position as did its assignor with respect to the equitable interest of the intervenor in the indebtedness involved in the suit. The court decreed an equitable lien on the property described in each of the mortgages in favor of plaintiff, Guaranty Mortgage and Insurance Company, but provided that all proceeds derived from the enforcement of such lien be paid over to in-tervenor Harris in satisfaction of the loan made by her to Florida Homecraft. It is from that decree that this appeal is taken.
Appellant contends that the pledge made by Florida Homecraft to appellee Harris of the notes and mortgages involved in this proceeding may have been binding on the parties to the contract, but it is not binding on appellant. Appellant urges that its title to the notes and mortgages in question is superior to any claim asserted by Harris for the reáson that (a) the notes and mortgages forming the subject of the pledge were never physically delivered into the possession of the pledgee Harris; (b) that the notes evidencing the indebtedness secured by each of the mortgages were never endorsed by the mortgagee to the pledgee Harris; (c) no notice of the pledge by Florida Homecraft to Harris was ever given to the debtor mortgagors; and, (d) no notice of the pledge to Harris, either actual or constructive, was given to the several assignees of the notes and mortgages, including the plaintiff, Guaranty Mortgage and Insurance Company. In support of its position appellant cites that provision of Florida Jurisprudence which states:
“While, an agreement to pledge property may be binding on the parties thereto although there has not been a delivery of possession of the security, it is essential to a consummated contract of pledge that there shall have been a delivery of the pledged property to the pledgee or pledge holder. Until the act of delivery has been performed, the special property that the pledgee is entitled to hold does not vest in him. * * *" [1]
While the foregoing statement correctly represents the law of this state, it cannot lend comfort or support to appellant’s position under the facts of this case. The chancellor found, and we think correctly so, that the contract between Florida Homecraft and the Harrises vested in the latter an equitable interest in the notes and mortgages which form the subject of this proceeding. Had Florida Homecraft remained the owner of such notes and mortgages and thereafter failed to redeem them by paying the amount of indebtedness owed by it to the Harrises, there can be little question but that the Har-rises could have enforced an equitable right *453 against the notes and mortgages, and the indebtedness evidenced and secured thereby, in the hands of Florida Homecraft. The Harrises’ right to an equitable interest in the notes and mortgages as against Florida Flomecraft would not be dependent upon whether the pledge of the instruments attempted by the written contract of March 23, 1960, was sufficient in law to constitute an unimpeachable pledge of the instruments themselves.
We next turn to a consideration of whether the assignee, plaintiff Guaranty Mortgage and Insurance Company, is in any different legal position than its original assignor, Florida Homecraft, and whether it is entitled to defenses against the claim of priority asserted by intervenor Harris which would not be available to Florida Homecraft. We think each inquiry must be answered in the negative.
The proof establishes and the chancellor found that each of the notes and mortgages forming the subject of this proceeding were in default at the time they were assigned by the mortgagee, Florida Homecraft, to appellant’s assignor. Because of the defaulted condition of the notes and mortgages at the time they were assigned, neither appellant nor its assignor was entitled to protection as holders in due course of the instruments sued upon. The general rule governing this factual situation appears to be:
“Negotiable paper which is overdue carries on its face notice of infirmities and defects, and one who takes a negotiable instrument after its maturity ordinarily is not entitled to protection as a holder in due course, but occupies the status of the assignee of a chose in action or the holder of a nonnegotiable instrument, [sic] Which means that he holds the instrument subject to defenses based on infirmities in-the instrument or defects in the title of the person transferring it. * * * ”[2]
From the foregoing principle it appears that the assignee of defaulted negotiable paper occupies the status of the holder of a nonnegotiable instrument. As to those occupying this status, the rule appears to be:
“ * * * . There cannot be a holder in due course of a nonnegotiable instrument, and the doctrine of protecting a bona fide holder for value without notice and before maturity does not apply, no matter how widely or how narrowly the instrument may miss being negotiable or how the parties themselves may have regarded the instrument. * * *
“The purchaser of a nonnegotiable instrument is a mere assignee. His position is the same as that of his assignor, whether he holds by assignment or indorsement. He receives only such rights or title as the assignor possessed and ordinarily takes title subject to all equities and defenses which would be available as between the original parties or which could be urged against the payee and his assignor, even though he is given the right to sue in his own name.” [3]
Because plaintiff was not a holder in due course of the notes and mortgages sued upon in this proceeding, it was not protected against the equities of intervenor Harris, and stands in the same shoes with respect to Harris’ claim of priority as would its original assignor had not the notes and mortgages been assigned by it.[4]
As an alternative assault on the decree appealed appellant calls attention to *454 the fact that the notes and 'mortgages for which foreclosure was sought were decreed to he null and void, and appellant was awarded an equitable lien against the property described in the mortgages for only the amount established by it to have been used in making improvements upon the property. Because of this, appellant takes the position that it is the ultimate assignee of the accounts receivable by Florida Home-craft from the original mortgagors, and that appellee is merely the assignee of the identical accounts receivable from the same sources. Appellant therefore reasons that since it first served on the original debtors (mortgagors) notice of its claims for the accounts receivable as evidenced by the notes and mortgages assigned to it, that it comes within the rule of law pronounced by the Third District Court of Appeal in the Boulevard National Bank of Miami case as follows:
“We hold that the trial judge correctly determined that the rule in Florida is the so-called English rule to the effect that as between assignees of the same accounts receivable, the assignee who first gives notice of his claim to the debtor is preferred and has the prior right.” [5]
The fallacy of appellant’s argument lies in the fact that it never purchased nor did it receive by successive assignments any accounts receivable by Florida Homecraft from the original mortgagors. What appellant did purchase and receive were notes and mortgages later held to be invalid by the decree rendered in this proceeding. Since the only thing appellant received for its money was disputed unliquidated claims against the original mortgagors, its chose in action cannot be held to be an account receivable within the holding of the Boulevard National Bank of Miami case.
For the reasons and upon the authorities above cited, we conclude that the chancellor applied to the undisputed facts in this case correct principles of law in entering the decree appealed. The respective decrees rendered in each of the cases consolidated on this appeal are accordingly affirmed.
STURGIS and CARROLL, DONALD K., JJ.,-concur.

. 25 Fla.Jur. 313, Pledge, etc., § 7.

. 4 Fla.Jur. 435, 436, Bills, Notes and Checks, § 113.

. 11 Am.Jur.2d 402, 403, Bills and Notes, § 377; See also Stegemann v. Emery, 108 Fla. 672, 146 So. 650.

. Hulet v. Denison, 146 Fla. 478, 1 So.2d 467.

. Boulevard National Bank of Miami v. Air Metal Industries, Inc., (Fla.App.1965) 174 So.2d 559, 560; Aff'd Fla.1965, 176 So. 2d 94.