271 So.2d 207 (1972)
JEFFERSON NATIONAL BANK AT SUNNY ISLES et al., Appellants,
v.
METROPOLITAN DADE COUNTY et al., Appellees.
No. 72-165.
District Court of Appeal of Florida, Third District.
December 12, 1972.
*208 Katz & Salmon, Miami Beach, for appellants.
Stuart L. Simon, County Atty, Huebner, Shaw & Bunnell, Fort Lauderdale, for appellees.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
PER CURIAM.
The appellants are the owners of lots in a subdivision. Their lots front on a navigable body of water, known as Bella Vista Bay, which connects with the Intracoastal Waterway, in Dade County.
Basically involved in the litigation was whether the appellant lot owners lawfully could extend their lots, by filling, into Bella Vista Bay, beyond an officially established bulkhead line, without permit, and free of state or county control. The trial court held they could not, and ordered fill so made to be removed. We affirm.
The appellant Jefferson National Bank at Sunny Isles, after having so extended its property into the bay approximately 45 feet, filed this action against Dade County, the Trustees of the Internal Improvement Trust Fund of the State of Florida, the United States of America,[1] and Hart Properties, Inc. and Joseph Hart. By its complaint as amended, the plaintiff sought a judgment declaring it to be the rightful owner of such filled land and enjoining the defendants from taking any action against the plaintiff by reason thereof. Also, predicated upon an allegation that in 1968 the county had denied its application for a permit to construct a boat slip into and a retaining wall for said filled in land, the plaintiff prayed for a mandatory injunction to require the defendant Dade County to issue a permit for such construction. Included in the complaint as amended was a count charging the defendants Hart Properties, Inc. and Joseph Hart with having made slanderous statements relating to the plaintiff in reference to plaintiff having extended *209 its property into the bay, for which damages were sought.
The Board of Trustees of the Internal Improvement Trust Fund answered stating it was without knowledge as to the allegations of the complaint and averred as follows:
"2. For further answer to said amended complaint, the defendant does not assert or claim any jurisdiction or control over the body of water described in said amended complaint if said body of water was artificially created. If said body of water is a navigable body of water, then the defendant asserts jurisdiction to regulate and control said body of water under the provisions of Chapter 253, Florida Statutes [F.S.A.]." [Italics supplied.]
The defendant Dade County answered, averring that plaintiff's extension of its property into the bay had been without permit, and citing § 2-103.1 of the Code of Metropolitan Dade County under which it is required that a permit be obtained from the Public Works Department of the county as a condition precedent to such fill. The county's answer further averred that the plaintiff, as owner of the property in question, was precluded from extending the same into the bay by virtue of a decree of the circuit court of Dade County, rendered on February 16, 1951, in a cause styled Covert v. Sunny Isles Ocean Beach Company, Case No. 121605, in chancery and averred that a plat of the subdivision, made in conformity to a requirement therefor in said decree, had fixed the limit of plaintiff's property (Lot 28 and east half of 27) bordering on the bay. Regarding the county's rejection in 1968 of plaintiff's application for construction of a boat slip and sea wall, the defendant county averred that the application had been denied because the proposed construction would be outside the official bulkhead line which marked the limit of ownership of the plaintiff as fixed in the 1951 equity decree and by said plat.
The answer of the county incorporated a counterclaim charging that extension of the property by fill into the bay had been made without authority and unlawfully, and prayed for a mandatory injunction directing the removal thereof. With leave of court the county joined the owners of Lots 29, 30 and 31, and applied its counterclaim against those additional defendants. It was alleged that the owners of Lot 29, Theodore Stevens and Charlotte Stevens, had so encroached by filling beyond the bulkhead line a distance of 63 feet; that the owners of Lot 30, Alfred Titone, Charles Titone, Seymour Titone (and Jean Titone and Anita Scarperia holding an interest by contract) had caused such an encroachment of 43 feet; and that the owner of Lot 31, Sal Sid, Inc., had caused an encroachment of which the maximum was 44 feet and which averaged 31 feet The extent of the encroachment by plaintiff was approximately 45 feet beyond the bulkhead line. It was alleged in the county's counterclaim that of the nineteen lots fronting on the north side of Bella Vista Bay as shown on the plat the only encroachment by extensions into the bay was from the four parcels above referred to.
The defendants Hart Properties, Inc. and Joseph Hart answered averring that the statements attributed to them alleged by the plaintiff to have been slanderous, were privileged, and were made with good motive. The defendant Hart Properties, Inc. counterclaimed against the plaintiff and cross-claimed against the other lot owners joined in the action, alleging the facts substantially as stated in the counterclaim of the county. It was alleged that the counterclaimant was the holder of a 99-year lease on Faryland Island, lying opposite the lots in question, and that said encroachments, by reducing the area between said properties, had increased the *210 effect of the wakes made by vessels passing in the Intracoastal Waterway between said properties, creating erosion and maintenance problems, and by restricting the flow of tidal waters had "created a pollution problem because certain debris periodically collected near counter-plaintiff's property creating an additional maintenance problem." Counterclaimant sought damages "because of the wrongful and unlawful encroachment and nuisance," and an injunction against further encroaching upon the bay and directing removal of the existing fill encroachments. The counter-defendants and cross-defendants answered by general denials.
The plaintiff answered the counterclaim of the county. Therein plaintiff averred that the decree which had been rendered in 1951 by the circuit court of Dade County in Covert v. Sunny Isles Ocean Beach Company was not binding on the plaintiff and did not run with the land; that Dade County was estopped to claim that the filled in land was illegally acquired, for the reason that the county previously had issued a building permit for the existing building on its lots, based on plans and specifications submitted therefor which had shown the parcel in its enlarged form or area. The plaintiff further averred that Bella Vista Bay was an artificially created waterway.
The matter came on for hearing before the court on motions of the defendants Dade County and Hart Properties, Inc. for summary judgment. Included in the evidence before the court was the 1951 decree of the circuit court which had fixed the bulkhead line as a limit beyond which fill was not to be permitted, and evidence that subsequently, in September of 1958, the Dade County Commission, as authorized under § 253.122 Fla. Stat., F.S.A. had fixed a bulkhead line there, being the same as that which had been designated in the 1951 circuit court decree. Also, there was evidence that no permit had been issued for extending said lots beyond the bulkhead line by filling, as required by § 253.124 Fla. Stat., F.S.A., and § 2-103.1 of the Code of Metropolitan Dade County.
The suit in which the 1951 decree was entered, fixing the bulkhead line of said lots and providing against the extension thereof beyond said bulkhead line, was brought by owners of lots in the subdivision facing on Bella Vista Bay, including the then owners of the lots involved here, of whom the appellants are the successors in interest. The suit by the lot owners against the subdivider was for determination of their rights and interests therein. The style of the case was Michael Covert, et al. v. Sunny Isles Ocean Beach Company, et al. (in chancery, No. 121605). The final decree therein, entered February 16, 1951, stated it was entered "for the express purpoes of making a final determination of the rights of all parties to this suit in and to those certain subdivisions situated in Dade County, Florida, known and described as follows:" (with designation of subdivision properties including the parcels or lots involved in the present action).
That decree extended the ownership or title to the lots fronting on Bella Vista Bay from their then existing shoreline outward to a bulkhead line fixed by the decree, which was designated therein as the "limit of fill," and conferred upon the lot owners the right to dredge or extract fill from the bay bottom, within a fixed outer line, designated in the decree as the "limit of dredging," for use in filling the lots out to the created bulkhead line marking the outer limit of ownership and filling.
The decree directed that a revised plat be made conforming thereto. Such a plat was made, and was approved by the County Commission on April 16, 1951, and recorded. It bore a certificate of the judge of the circuit court that it was prepared in accordance with the said decree of February 16, 1951. A portion of that plat, sufficient for the purposes of this case is set out herein.
*211 
*212 The plat shows the extent to which the 1951 circuit court decree extended the ownership or title of the lots from the then shoreline to the designated bulkhead line. The outer line on the plat, entitled "Property line," marked the limit of the area in the bay beyond the bulkhead line from which a lot owner could remove material from the bay bottom for the purpose of filling and extending his lot out to the bulkhead line.[2]
In the judgment entered here upon granting the motions of defendants for summary judgment, the court found that it appeared conclusively and beyond issue that the counter-defendants had extended the southern shoreline of their properties, by filling, beyond the bulkhead line established by the circuit court decree of 1951, and beyond the bulkhead line established by the Dade County Commission and approved by the Trustees of the Internal Improvement Fund, and further that such filling was done without applying for or obtaining a permit therefor as required by Chapter 253 [§ 253.124 Fla. Stat., F.S.A.] and § 2-103.1 of the Code of Metropolitan Dade County; and the court there added: "It is immaterial whether the waterway abutting counter-defendants' lots is natural or artificial."
The judgment enjoined the counter-defendants "from maintaining any fill or encroachment on their property described in the counterclaims beyond the bulkhead line established by the final decree of February 16, 1951, and subsequent resolutions of the Dade County Commission," and directed that all fill placed beyond said bulkhead line "be removed so that the shoreline of the lots described in the counterclaims does not extend beyond the said bulkhead line"; and further enjoined the counter-defendants "from filling or otherwise extending any existing lands or islands on their lots described on the counterclaims herein beyond the aforesaid bulkhead line." The court retained jurisdiction under the counterclaim of Hart Properties, Inc. "to determine what if any damages have been suffered by Hart Properties, Inc. as a proximate result of counter-defendants having filled beyond the said bulkhead line."
On appeal therefrom the appellants present three points or contentions as grounds for reversal. The first is that the question of whether Bella Vista Bay was artificially or naturally created (which the court found was immaterial) was a material issue to be tried. Second, that the court could not properly have found that the appellants *213 were in violation of Chapter 253 Fla. Stat., F.S.A., "If the artificial or natural creation of Bella Vista Bay was an immaterial issue and therefore not determined." The third contention presented was that the county was estopped to seek relief against the appellants for the claimed encroachment by filling beyond the bulkhead line.
The first two of those contentions are predicated upon the argument of the appellants that by virtue of a proviso included in subsection (1) of § 253.123 the provisions of Chapter 253 Fla. Stat., F.S.A., and of Metropolitan Dade County for control of lands under navigable waters would have no application to Bella Vista Bay if that navigable body of water was artificially created, and therefore that they were at liberty to extend their properties into the bay by filling, without the necessity of any permit and without official control or restriction by the state or by the county. With that argument of the appellants we cannot agree.
The provision relied upon by appellants is in § 253.123 of Chapter 253. Subsection (1) thereof prohibits addition or extension of existing lands or islands bordering on or being in navigable waters of the state without first complying with the preceding section 253.122, following which there is stated: * * * provided nothing herein contained shall relate to artificially created navigable waters."
The preceding section 253.122 to which reference there was made, is entitled "Power to fix bulkheads." That section contains extensive provisions dealing with the fixing of bulkhead lines by a county in the navigable waters of the county, and contains a provision that any bulkhead line when so fixed and established should mark the limit for extension of property in the waters of the county.[3]
If navigable Bella Vista Bay was artificially created, then by virtue of the proviso in § 253.123(1), a riparian owner could extend his land into the bay by filling, without the preliminary requirement of a bulkhead line having been fixed by the county, on its own initiative or upon application of the owner as provided for in § 253.122. However, under § 253.124, which makes no distinction between natural or artificially created navigable waterways, before any upland owner can so extend his land into navigable waters as defined in § 253.12, he must have applied for and obtained a permit from the county, upon making the elaborate showing necessary therefor. Under subsection (5) of § 253.124, violation thereof is a misdemeanor of the second degree, and by subsection (6) the board of county commissioners is given "the authority to direct the abutting upland owner to remove any fill created in violation of this section." By subsection (7) the granting of an "after the fact" permit is sharply restricted. Also, there was the similar permit requirement in the county code.
Whether or not it was necessary in this instance for a bulkhead line to have been fixed before an owner could apply for and be granted a permit to extend his lot into the bay, a bulkhead line in fact had been fixed both by the 1951 circuit court decree and recorded plat, and by the county commission acting pursuant to § 253.122. Where the bulkhead line had been so fixed, the upland owners were precluded from extending their lots by fill beyond that point. Gies v. Fischer, Fla. 1962, 146 So.2d 361.
Here, because the appellants extended their lots into the bay without permit, and beyond the fixed bulkhead line, the trial court was eminently correct in holding that it was immaterial whether Bella Vista *214 Bay was artificially created, and that such fill by the appellants beyond the bulkhead line was unlawful and subject to removal.
The contention of estoppel presented by appellants applies only to the property of the plaintiff Jefferson National Bank of Sunny Isles. Upon consideration thereof we find the contention is without merit. Assuming, without so deciding, that the issuance by the county of a building permit to the lot owner at a time when the county had knowledge of the encroachment would estop the county to subsequently claim illegality of the encroachment, the factual basis for such contention of estoppel is not shown on the record.
While the doctrine of estoppel can be applied against the state or its subdivisions (Trustees of Internal Improvement Fund v. Claughton, Fla. 1956, 86 So.2d 775), the instances are rare when the doctrine will be so applied. It will be invoked only under very exceptional circumstances, which must include some positive act on the part of an authorized official, and in no instance does it appear that the doctrine of equitable estoppel has been applied to divest the state of its land. Bryant v. Peppe, Fla. 1970, 238 So.2d 836. See also Adams v. Crews, Fla.App. 1958, 105 So.2d 584. Moreover, one's own wrongful act ordinarily cannot serve as a basis of a claim of estoppel against another, and it can be applied as an estoppel against estoppel. Florida Land Inv. Co. v. Williams, 98 Fla. 1258, 116 So. 642.
It appears that after the plaintiff had extended its land into the bay by filling, it made an application to the county for a permit to construct a business building on its property, and the permit was granted.[4] The plaintiff-appellant contends estoppel should be applied against the county because the plans it submitted in making the building permit application showed a parcel which included said additional area. However, as pointed out by the county, the plans submitted with the application did not show or indicate the position of the bulkhead line on or with reference to the parcel there disclosed. Thus it was not made to appear that the county knowingly acquiesced in the encroachment in or by issuance of the building permit.
The riparian rights of the appellant upland owners did not create or confer upon them any ownership interest in waters of the bay, beyond the border of their lots on the bay as determined in the 1951 court decree and as shown on the plat. Under the Riparian Act of 1957, Ch. 57-362, riparian rights "are not in the nature of a qualified title in the adjacent submerged lands but are in the nature of a preferred right of purchase." Tri-State Enterprises, Inc. v. Berkowitz, Fla.App. 1966, 182 So.2d 40, 43.
No reversible error having been demonstrated, the judgment appealed from is affirmed.
NOTES
[1] The plaintiff subsequently dismissed the United States from the cause.
[2] With regard to the plat provided for in the 1951 decree of the circuit court, the decree stated as follows: "(2) That a new plat has been prepared in accordance with the statutes of Florida, by M.B. Garris, Civil and Consulting Engineer, Miami, Florida, which new plat is entitled `Second Revised Plat of Bella Vista Subdivision'; that the location of all lines, boundaries of lots or parcels, bulkhead lines, and property lines are marked or indicated on said plat; that said `Second Revised Plat of Bella Vista Subdivision' does not include any property, whether islands, waterways, or submerged lands, beyond the limits of the property lines as shown on said plat; that the respective owners of all lots or parcels of land designated on said `Second Revised Plat of Bella Vista Subdivision' are hereby decreed to have and to hold a fee-simple interest in and to the respective waterways, islands, submerged lands, and filled-in lands, and lying between the prolongation of their respective upland property lines extending to the bulkhead lines shown on said plat. The submerged area and islands lying between the bulkhead line (limit of fill) and property line (limit of dredging), as shown on said `Second Revised Plat of Bella Vista Subdivision,' and between the prolongation of the upland property lines, may be used as dredged or dredging material by the respective upland owners of lots adjacent thereto.

"(3) That, in accordance with the above-mentioned `Second Revised Plat of Bella Vista Subdivision,' the titles of the respective owners as shown by the public records of Dade County, Florida, be, and the same are hereby, respectively declared, quieted, and confirmed, so that each owner will own his own respective property in accordance with the terms of this final decree."
[3] § 253.122(1) Fla. Stat., F.S.A. provides:

"* * * Any bulkhead line when so fixed or ascertained and established shall represent the line beyond which a further extension creating or filling of land or islands outward into the waters of the county shall be deemed an interference with the servitude in favor of commerce and navigation [and conservation of natural resources,] with which the navigable waters of this state are inalienably impressed."
[4] There was no showing that the location of the building, for construction of which the county issued a permit, was not on Lot 28 and the east half of Lot 27 as platted, or that any part of the building was on the area which had been filled in by the plaintiff beyond the bulkhead line.