623 So.2d 474 (1993)
STATE of Florida, Petitioner,
v.
FAMILY BANK OF HALLANDALE, etc., Respondent.
No. 79449.
Supreme Court of Florida.
July 1, 1993.
Rehearing Denied September 23, 1993.
*475 Robert A. Butterworth, Atty. Gen. and Kimberly J. Tucker, Deputy General Counsel, Tallahassee, for petitioner.
Robert L. Hinkle of Aurell Radey Hinkle Thomas & Beranek, Tallahassee, for respondent.
McDONALD, Justice.
We review State v. Family Bank of Hallandale, 593 So.2d 581 (Fla. 1st DCA 1992), because of conflict with Town of Bithlo v. Bank of Commerce, 92 Fla. 975, 110 So. 837 (1926). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. The issues are whether state warrants are negotiable instruments and whether a holder of a state warrant is entitled to pre-judgment interest on the amount of the warrant. We quash the opinion under review and hold that state warrants are not negotiable instruments and that the award of pre-judgment interest was improper.
The Department of Transportation awarded a contract to Ted's Sheds, Inc., for several metal buildings to be used at various service plazas on the Florida Turnpike. Ted's Sheds provided a Ft. Lauderdale address during the bidding process. When the buildings were delivered, the State received an invoice from Ted's Sheds, Inc., listing its address as Bonita Springs, Florida. The State approved the invoices for payment and, on February 5, 1987, the Comptroller issued a warrant for $16,932 payable to the order of Ted's Sheds and sent it to the Ft. Lauderdale, Florida, address listed on the original bid.
On February 12, 1987, Ted's Sheds of Broward, Inc., presented the original warrant to Seminole National Bank.[1] The warrant was endorsed "Ted's Sheds of Broward, Inc.," and was credited by the bank. Sometime thereafter, the agents of Ted's Sheds, Inc., in Bonita Springs stated that they had not received the warrant and requested a duplicate warrant. It was then discovered that there were two Ted's Sheds, one in Ft. Lauderdale known as "Ted's Sheds of Broward, Inc.," and one in Bonita Springs, known as "Ted's Sheds, Inc." These separate legal entities shared common corporate officers. On February 19, 1987, the Comptroller placed a stop payment order on the original warrant, issued a duplicate warrant to Ted's Sheds, and mailed it to Ted's Sheds, Inc., in Bonita Springs. Subsequently, the Federal Reserve Bank of Miami returned the original warrant to the bank indicating that payment had been stopped by the state treasurer.
The bank initiated this action some fourteen months after the original warrant was returned. In the intervening time, Ted's Sheds of Broward, Inc., was involuntarily dissolved. The bank argued that it had no knowledge of the stop payment order and asserted that it was a "holder in due course" entitled to reimbursement by the State of Florida on the theory that state warrants are *476 negotiable instruments. The State maintained that state warrants are not negotiable instruments under the Uniform Commercial Code (UCC or Code), and, thus, the bank was not entitled to repayment of these funds by the people of the State of Florida. The trial court entered summary judgment in favor of the bank as holder for value of a state warrant. On appeal, the district court affirmed and held (1) the prevailing party in an action against the state is entitled to prejudgment interest, and (2) a state warrant is a negotiable instrument unless indicated otherwise.

I.
A brief examination of the meaning and use of warrants is desirable before addressing the issues in this case. In connection with state funds, the term "warrant" has a well-defined meaning. Warrants are devices, prescribed by law, for drawing money from the state treasury. They are orders issued by the official whose duty it is to pass on claims to the treasurer to pay a specified sum from the treasury for the persons and purposes specified. District of Columbia v. Cornell, 130 U.S. 655, 9 S.Ct. 694, 32 L.Ed. 1041 (1889); Wyatt v. State, 257 Ala. 90, 57 So.2d 366 (1952); Town of Bithlo; see also In re Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850 (1927). A warrant is not an order to pay absolutely, rather it is generally prima facie evidence of indebtedness payable out of a particular fund or appropriation. Wall v. Monroe County, 103 U.S. (13 Otto) 74, 26 L.Ed. 430 (1880); National Surety Co. v. State Trust & Sav. Bank, 119 Tex. 353, 29 S.W.2d 1027, 1030 (1930) ("[A city warrant] is but prima facie evidence that the city is indebted to the payee in the amount stated in the instrument."). Warrants have been regarded as negotiable in the restricted sense of the term in that they have the quality of easy or simple transferability. Monroe County. But, in fact, there is much pre-Code authority that a warrant possesses all of the qualities of negotiable paper but one, i.e., unlike negotiable paper, it is open to any defense which might have been made to the claim in the hands of the original holder. First Nat'l Bank v. School Dist. No. 15, 173 Minn. 383, 217 N.W. 366 (1928). Thus, warrants drawn for ordinary governmental expenses are licenses authorizing payment and are not intended to have all the qualities of commercial paper. Warrants do not represent a pledge of the general credit of the issuing body, but are instruments authorized for convenience in conducting ordinary business and as a means of anticipating revenue.
A warrant is best characterized as a chose in action, payable when funds are available for its purpose. This Court has held that there is a "vast distinction" between warrants and bonds. Marshall v. State ex rel. Sartain, 88 Fla. 329, 332, 102 So. 650, 651 (1924). A bond is basically an acknowledgement of indebtedness and a promise to pay, while a warrant is an order or direction to pay. The most noteworthy distinction between the two instruments is that a bond generally constitutes an absolute order to pay, while warrants generally are an order to pay out of a particular fund. Also, before the adoption of the Uniform Commercial Code, the point of distinction most often emphasized by the courts was the negotiability of bonds and the nonnegotiability of warrants. Littlejohn v. Littlejohn, 195 Ala. 614, 71 So. 448 (1916); Neugass v. City of New Orleans, 72 La. Ann. 163, 7 So. 565 (1890); Adams v. McGill, 146 S.W.2d 332, 334 (Tex.Civ.App. 1940) ("A bond is a negotiable instrument, while a warrant is nonnegotiable. A warrant is subject at all times to the defenses it would be subject to were it in the hands of the original payee  not so with a negotiable bond.").
Prior to the adoption of the Uniform Commercial Code in Florida, warrants issued by sovereign governmental entities were expressly declared nonnegotiable for public policy reasons. Town of Bithlo; Marshall. This position has been so firmly established that until the instant case Town of Bithlo and Marshall were the only instances where this Court considered this issue. Under the pre-Code law, the Uniform Negotiable Instruments Law (NIL) governed the negotiability of commercial paper. Chs. 674-676, Fla. Stat. (1965). During this stage, the law was clear, and there was no question as to the nonnegotiability of state treasury warrants. See, e.g., Annotation, Negotiability of County, Municipal, *477 School, State, or Town Warrants, 36 A.L.R. 949 (1925). The general rule regarding warrants under pre-Code law expressly provided that a warrant drawn by a proper officer on the state treasury was not a negotiable instrument in the sense of the law merchant. 81A C.J.S. States § 246 (1977); accord 64 Am.Jur.2D Public Securities and Obligations § 22 (1972). There are several reasons for this rule under the Uniform Negotiable Instruments Law; primarily, warrants are paid out of a particular fund and, therefore, are not unconditional. However, even though some warrants may have been in negotiable form under the NIL, Florida was among several jurisdictions that, because of public policy reasons, followed the rule that government warrants are not to be regarded as negotiable commercial paper so as to be free of all legal and equitable defenses of the particular governmental entity when in the hands of a holder in due course. Town of Bithlo; Marshall.
In its simplest terms, the public policy holding state warrants to be nonnegotiable instruments is the state's way of protecting the public treasury from crookedness and shady deals by dishonest officials. Warrants serve the dual purpose of safeguarding the public treasury and protecting the treasurer as to payments made in compliance therewith. State v. Kimball, 96 N.H. 377, 77 A.2d 115 (1950). "[W]arrants, because of the nature of their creation, the purposes for which issued, the informal manner of their issue, the danger of mistakes, fraud, want of consideration, etc., are not given the protection of negotiable instruments." Petters & Co. v. Town of Rock River, 37 Wyo. 225, 260 P. 674, 677 (1927). In Petters, the court held that the policy of allowing the government to assert defenses against a holder of a warrant must outweigh any innocent purchaser notions; otherwise a few dishonest officials could bankrupt an entire town. "It would overwhelm municipalities with ruin to hold that such warrants or orders have the qualities of negotiable paper, especially that quality which protects an innocent holder for value from defenses of which he has no notice, actual or constructive." 2 John F. Dillon, Municipal Corporations § 856 at 1295 (5th ed. 1911).
Warrants drawn for ordinary governmental expenses are not intended to have the qualities of commercial paper. They are instruments authorized for conveniently conducting ordinary governmental business. This is supported as much by the reason behind the purpose of these instruments as by consideration of the lack of power, inherent or implied, on the part of government to make and issue negotiable instruments without clear statutory authority. Id. The government, as conservator of public funds extracted involuntarily from the people by way of taxation, should be reserved the right to deny payment while asserting defenses it might have against the payee in order to maintain and protect its fiscal policies, practices, and procedures.
Thus, under Florida law warrants have always been nonnegotiable. However, the Family Bank argues that it is a holder in due course because the warrant comes within the definition of a "negotiable instrument" under chapter 673, Florida Statutes (1985), Florida's version of article 3 of the Uniform Commercial Code. The district court agreed with the bank and based its decision on the notion that when the Legislature enacted chapter 65-254, Laws of Florida, it brought state warrants into the class of commercial paper. The district court held that "[t]he legislature turned away from a historic public policy of nonnegotiability, announced through court decisions, and declared the policy of this state to be that government entities may issue negotiable paper that will move freely in commerce." Hallandale, 593 So.2d at 582. The court's determination is grounded in the absence of a specific exemption for state warrants in chapter 673. However, the court offered no citation of authority for its conclusion that the Legislature abandoned the public policy underlying the treatment of warrants as nonnegotiable. Furthermore, there is no express indication that the Legislature intended to change the treatment of warrants with the adoption of the Uniform Commercial Code.
We hold that the district court erred in its finding that the Florida Legislature, in adopting the Uniform Commercial Code, intended *478 to declare warrants to be commercial paper and abandon the public policy of nonnegotiability of governmental warrants. The Uniform Commercial Code expressly provides that principles of law and equity, including the law merchant, shall supplement the provisions of the Code, unless otherwise required by a particular Code provision. § 671.103, Fla. Stat. (1987). The conditional nature of warrants evidenced by numerous provisions of general law has remained similar in substance and clearly was not altered by the adoption of chapter 673. Compare §§ 18.02, 215.31, 215.35, 215.43, Fla. Stat. (1965), with §§ 18.02(1), 215.31, 215.35, 215.43, 216.311(1), 216.331, 216.351, Fla. Stat. (1989). Subsection 673.105(1)(g), Florida Statutes (1987), states that a government instrument, "otherwise unconditional is not made conditional by the fact that the instrument ... is limited to payment out of a particular fund." This provision incorporates prior Florida decisional law on the "particular fund" issue, but also recognizes that government warrants may be otherwise conditional and nonnegotiable. See Wright v. Board of Public Instruction, 77 So.2d 435 (Fla. 1955). Also, the forms of negotiable instruments expressed in the definitional section (section 673.104), namely drafts, checks, certificates of deposit, and notes, all lack the conditional qualities of governmental warrants. Thus, the Legislature's failure to articulate an exception for warrants under section 673.104 at the time of adoption does not call for a departure from long-established principles; rather the court should properly look to entrenched policy and the clear precepts contained in the law merchant.[2]
The only statement of Florida law on the negotiability of state warrants, after the adoption of the Uniform Commercial Code, is an Attorney General's opinion. Op. Att'y Gen.Fla. 73-101 (1973). Although an opinion of the Attorney General is not binding on a court, it is entitled to careful consideration and generally should be regarded as highly persuasive. Lowry v. Parole & Probation Comm'n, 473 So.2d 1248 (Fla. 1985); Beverly v. Division of Beverage of Dep't of Business Regulation, 282 So.2d 657 (Fla. 1st DCA 1973). The official opinions of the Attorney General, the chief law officer of the state, are guides for state executive and administrative officers in performing their official duties until superseded by judicial decision. State ex rel. Atlantic Coast Line R. Co. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922). In response to the specific question of whether state warrants are negotiable within the purview of the Uniform Commercial Code, the Attorney General summarily answered: "For reasons of public policy, state warrants are not negotiable instruments even though such warrants may comply with the form prescribed by the Uniform Commercial Code for negotiable instruments. Accordingly, a bona fide purchaser or assignee of a state warrant, for value, is not a holder in due course in the sense of the law merchant." Op.Att'y Gen.Fla. 73-101 at 162 (1973). This opinion has guided the course of state government since 1973. In the post-Code era, this is the only legal opinion on the question of negotiability of state warrants that existed prior to the trial court decision in this case. Accordingly, the state Comptroller has consistently relied on this official opinion when addressing claims on state warrants.
In support of the conclusion that state warrants are not negotiable instruments, we note that the Legislature adopted chapter 91-216, section 1, at 2065, Laws of Florida, adding subsection 673.104(4), Florida Statutes (1991), providing: "No warrant issued by the Comptroller of the State of Florida directing the Treasurer to pay a sum certain shall be considered a negotiable instrument within the meaning of this chapter." This statutory amendment was the Legislature's *479 direct response to the trial court decision in this case. By adding this subsection, the Legislature expressly intended to "clarify and confirm existing law" concerning the negotiability of state treasury warrants. See ch. 91-216, § 2, at 2066, Laws of Fla.
The Family Bank of Hallandale is not a holder in due course because the state treasury warrant involved is not a negotiable instrument to which the Uniform Commercial Code applies.[3] As a result, the Family Bank took the warrant subject to the State's defense that it had issued a valid stop payment order.

II.
We do not know the ultimate outcome of the case. Should the bank prevail, the issue of prejudgment interest would be involved. We also hold that the assessment of prejudgment interest against the State is improper because, under the doctrine of sovereign immunity, governmental entities are not liable for interest on their debts unless a statute or contract calls for it. The district court held that "a prevailing party against the state in an action on a state warrant is entitled to prejudgment interest." Hallandale, 593 So.2d at 582. However, it has long been established that the government is not liable for interest in the absence of an express statutory provision or stipulation by the government that interest will be paid. Broward County v. Finlayson, 555 So.2d 1211 (Fla. 1990); Flack v. Graham, 461 So.2d 82 (Fla. 1984); Board of Public Instruction v. Kennedy, 109 Fla. 153, 147 So. 250 (1933). The general immunity from interest is an attribute of sovereignty, implied by law for the benefit of the state. Flack; Treadway v. Terrell, 117 Fla. 838, 158 So. 512 (1935). The state's immunity from interest can be waived. Flack; Florida Livestock Bd. v. Gladden, 86 So.2d 812 (Fla. 1956); Treadway; Brooks v. School Bd., 419 So.2d 659 (Fla. 5th DCA 1982); Department of Health & Rehabilitative Services v. Boyd, 525 So.2d 432 (Fla. 1st DCA 1988). Waiver of such immunity occurs when the Legislature specifically authorizes suit against a governmental agency by statute without limitation as to interest or when the state enters into a contract fairly authorized by the powers of general law, and an action arises based the state's breach of that contract. Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4 (Fla. 1984); Treadway. However, the law is not absolute and a judicial determination regarding interest may depend on equitable considerations and whether the nature of the claim warrants a prejudgment interest award. Broward County; Flack. In Flack, this Court refused to permit the recovery of pre-judgment interest against the state, holding: "`[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable.'" 461 So.2d at 84 (quoting Board of Comm'rs v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313, 318 (1939)). Furthermore, "[i]n choosing between innocent victims the Court found it would not be equitable to put the burden of paying interest on the public." Id.
In the instant case we hold that, because the facts fail to establish the conditions precedent for an implied waiver of sovereign immunity, it is inappropriate to assess interest against the State. The Family Bank argues that this is an action on the State's contract as maker of the instrument at issue. We hold that the State of Florida had no contract with the Family Bank of Hallandale. In order to form a binding contract there must be a common or mutual intention of the parties. Mutual assent is an absolute condition precedent to the formation of a contract. *480 Absent mutual assent, neither the contract nor any of its provisions come into existence. Gibson v. Courtois, 539 So.2d 459, 460 (Fla. 1989). Prior to its acceptance of the warrant, Family Bank was on notice of the State's legal position that state warrants were not negotiable instruments. See Op. Att'y.Gen. 73-101 (1973). Therefore, there was no meeting of the minds on the most fundamental character of state warrants. Without a meeting of the minds on such an essential element there can be no enforceable contract.
Likewise, equitable considerations are in favor of denying an award of prejudgment interest against the State. The interest awarded against the State in this case includes interest for periods of delay caused by Family Bank. These delays are the result of filing in the wrong venue, opposing a transfer to the proper venue, failure to pay a filing fee in the transfer venue, failure to prosecute the case leading to dismissal for failure to prosecute, failure to schedule hearings on its own motions, and requests for enlargement of time.[4] Also, Family Bank might have prevented its loss by taking commercially reasonable steps when it became aware of the fraud. For example, the bank could have placed a hold on the account of Ted's Sheds of Broward, Inc., when the warrant was returned by the Federal Reserve Bank in Miami, on March 10, 1987. Instead, Family Bank waited fourteen months to file this action before bringing its loss to the State's attention. During this time, the corporate entity responsible for the bank's loss, Ted's Sheds of Broward, Inc., was involuntarily dissolved. Family Bank's delay in asserting its claim rendered the possibility of recovering the money from those responsible for the fraud unlikely.
Therefore, we quash the decision under review and direct the district court to remand for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in result only.
NOTES
[1] The Family Bank of Hallandale is the successor in interest of Seminole National Bank.
[2] The State of California treats governmental warrants the same as Florida does. It has always held warrants to be nonnegotiable, Dana v. City & County of San Francisco, 19 Cal. 486 (1861), and operates under a version of the Uniform Commercial Code which is nearly identical to ours. See Cal.Com.Code. 3104-05 (Deering 1986). In People v. Norwood, 26 Cal. App.3d 148, 154, 103 Cal. Rptr. 7 (1972), the court recognized the vitality of pre-Code decisions and stated that the doctrine of a "holder in due course" was inapplicable to a governmental warrant. The court further acknowledged that, notwithstanding the words "to the order of" preceding the payee's name, a warrant was not negotiable, only an assignment of a right to funds.
[3] Alaska, unlike California, has ruled otherwise. In National Bank of Alaska v. Univentures, 824 P.2d 1377 (Alaska 1992), the state was a tenant in a large office building and a dispute arose over its monthly lease payment. The court held that a state treasury warrant issued to pay the monthly rent was a negotiable instrument. In reaching its decision the court simply relied on the four-prong statutory definition of a negotiable instrument and the general UCC policy of modernizing commercial transactions. Alaska Stat. § 45.03.104(a) (1986). No Alaska case law had addressed this issue before and, although the court recognized that prior to the adoption of the Code, warrants "were almost universally deemed nonnegotiable," the court's cursory analysis gave no consideration to the sound public policy reasons supporting early case law. Id. at 1380.
[4] Present counsel, who has zealously pursued the interests of the bank, did not represent the bank at this time.