667 So.2d 257 (1995)
STATE of Florida, Appellant,
v.
FAMILY BANK OF HALLANDALE, as successor-in-interest to Seminole National Bank, Appellee.
No. 94-2475.
District Court of Appeal of Florida, First District.
August 31, 1995.
*258 Robert A. Butterworth, Atty. Gen., James A. Peters, Asst. Atty. Gen., Tallahassee, for appellant.
Robert L. Hinkle of Radey Hinkle Thomas & McArthur, Tallahassee, for appellee.
ERVIN, Judge.
The state of Florida appeals from a final judgment holding that a warrant which the state issued was a binding and valid obligation, and that, as between the state and appellee, Family Bank of Hallandale, the state, as the party having superior knowledge that should have caused it not to issue the warrant, must bear the loss. We reverse with directions to the trial court to enter judgment in favor of the state, because the bank, as assignee of its account holder who committed fraud, held the warrant subject to the state's fraud defense and a valid stop payment order.
The facts in this case are not in dispute. The Department of Transportation accepted bids for two metal buildings to be used on the turnpike, and the contract was awarded to "TEDS SHEDS" of "5200 S. State Rd. # 7, Ft. Lauderdale, FL 33314." The buildings were delivered and two separate invoices were billed to the Department. The address listed on the invoices was "Ted's Sheds, Inc., Bonita Beach Road, P.O. Box 249, Bonita Springs, Florida 33923." Warrant No. 1413923 was issued on February 5, 1987, in the amount of $16,932, made payable to "TEDS SHEDS" in full payment for the buildings.
On February 19, 1987, someone contacted the Department, identifying himself as an agent for Ted's Sheds, Inc. He explained that Ted's Sheds, Inc. had not received the warrant; that there were two Ted's Sheds, one located in Ft. Lauderdale named "Ted's Sheds of Broward, Inc.," and the other in Bonita Springs named "Ted's Sheds, Inc."; and that Ted's Sheds, Inc. was the corporation which was awarded the contract and had performed thereunder. The person requested that a warrant be sent to the Bonita Springs address listed on the invoices. The Department confirmed that there were two Ted's Sheds and requested the state comptroller to issue a stop payment order on the original warrant as well as a duplicate warrant, payable to "Ted Sheds" in Bonita Springs, both of which were done that day.
On February 12, 1987, Ted's Sheds of Broward, Inc. endorsed the first state warrant to the order of Seminole National Bank, and Seminole paid Ted's Sheds of Broward, Inc. the face amount of $16,932, by crediting its account. The state, through the Federal Reserve Bank of Miami, subsequently returned the warrant to Seminole on March 10, 1987, indicating that payment had been stopped by the state treasurer. Meanwhile, Harold T. Goodrich, the president and registered agent of both of the corporate entities named Ted's Sheds, endorsed the duplicate warrant and deposited it in First National Bank, Ft. Myers. That bank submitted the warrant for collection, which resulted in payment of the full amount  $16,932.
Over a year later, Family Bank of Hallandale, as successor-in-interest to Seminole, filed an action against the state and Ted's Sheds of Broward, Inc., its account holder.[1] In its two-count complaint, Family Bank alleged (1) that it was a "holder in due course" of the original warrant, and (2) that it was a "holder" of the warrant. Although summary judgment was initially entered in the bank's favor on the theory that it was a holder in due course of a negotiable instrument, the supreme court ultimately held that the state warrant did not have the status of a negotiable instrument. Consequently, Family Bank was deemed not a holder in due course, and, as a holder, it took the warrant subject to the state's defense that a valid stop payment order had been issued. State v. Family Bank of Hallandale, 623 So.2d 474 (Fla. 1993).
On remand, Family Bank asserted that the stop payment order was invalid, unauthorized, and, as it was not issued until after *259 Family Bank had taken the warrant, the court should therefore reject the state's defense. Alternatively, Family Bank argued it was entitled to prevail, because it was an assignee of a properly issued, valid state warrant. As such, the state could only assert the defenses it had against Ted's Sheds at the time of the assignment, and it had no defenses at that time. Moreover, the bank argued that the state was estopped from challenging the validity of the assignment by its negligence in issuing the second warrant. The trial court adopted the bank's alternative argument, determined the state could have better prevented the loss, and entered judgment in favor of the bank. We cannot agree with the court's rationale.
The law is well established that an unqualified assignment transfers to the assignee all the interests and rights of the assignor in and to the thing assigned. The assignee steps into the shoes of the assignor and is subject to all equities and defenses that could have been asserted against the assignor had the assignment not been made. See Dependable Ins. Co. v. Landers, 421 So.2d 175, 179 (Fla. 5th DCA 1982). As a general rule, the assignee of a nonnegotiable instrument takes it with all the rights of the assignor, and subject to all the equities and defenses of the debtor connected with or growing out of the obligation that the obligor had against the assignor at the time of the assignment. Dickerson, Inc. v. Federal Deposit Ins. Corp., 244 So.2d 748, 749 (Fla. 1st DCA), cert. dismissed, 255 So.2d 521 (Fla. 1971); Guaranty Mortgage & Ins. Co. v. Harris, 182 So.2d 450, 453 (Fla. 1st DCA), rev'd on other grounds, 193 So.2d 1 (Fla. 1966).
Because the fraud was not apparent to the state until Ted's Sheds, Inc. requested the duplicate warrant a week after the original warrant was assigned to the bank, the question emerges concerning whether defenses that arise after the assignment may be asserted against the assignee. As the Fifth District explained in the context of a sales contract for a yacht, "An assignee has traditionally been subject to defenses or set-offs existing before an account debtor is notified of the assignment." First New England Fin. Corp. v. Woffard, 421 So.2d 590, 595 (Fla. 5th DCA 1982) (emphasis added). Accord Restatement (Second) of Contracts § 336(2) (1981) ("The right of an assignee is subject to any defense or claim of the obligor which accrues before the obligor receives notification of the assignment, but not to defenses or claims which accrue thereafter... ."); Bear v. Duval Lumber Co., 112 Fla. 240, 246, 150 So. 614, 617 (1933) ("As assignee of the obligee, Standard Accident Insurance Company stands vested with the same right that was vested in its assignor at the time the assignment was made.").
Based on the foregoing, we conclude that Family Bank, as assignee, took the warrant subject to all the claims and defenses the state could assert against its assignor, Ted's Sheds of Broward, Inc., up until the time the state was notified of the assignment. Nothing in the record indicates that the state had notice of the assignment until the warrant was presented for payment, and, at that time, the fraud had been committed and the state had already issued its stop payment order. Thus, under pure assignment law, the bank is not entitled to prevail against the state, because, as assignee of Ted's Sheds, it held the warrant subject to the state's fraud defense and a valid stop payment order.
The general rule that an assignee occupies the same position as the assignor is subject to the qualification that equitable principles, such as estoppel, may be applied to alleviate harsh operation. Finesmith v. Singer, 216 So.2d 39, 40 (Fla. 3d DCA 1968). We do not consider, however, this to be a proper case for the application of estoppel. In so saying, we are strongly persuaded by First National Bank of Birmingham v. Department of Revenue, 364 So.2d 38 (Fla. 1st DCA 1978), appeal dismissed, 368 So.2d 1366 (Fla. 1979), in which this court considered whether equitable estoppel should be applied against the state in regard to a tax assessment. There we noted that "[i]t is only in very exceptional circumstances that the rule of estoppel may be imputed to the state." Id. at 41. In our judgment, the present case does not present such egregious circumstances as to permit the imposition of estoppel against the state. The state was, at *260 most, negligent in issuing the second warrant.[2] Ted's Sheds perpetrated a fraud on the state, and Family Bank, as assignee of Ted's Sheds, is subject to that defense. "Moreover, one's own wrongful act ordinarily cannot serve as a basis of a claim of estoppel against another, and it can be applied as an estoppel against estoppel." Jefferson Nat'l Bank v. Metropolitan Dade County, 271 So.2d 207, 214 (Fla. 3d DCA 1972), cert denied, 277 So.2d 536 (Fla. 1973).
In that estoppel is an equitable principle, we conclude that, as between the two parties, the one who was merely negligent should prevail over the one who perpetrated a fraud. Additionally, such result is consistent with the public policy associated with state warrants, which the supreme court discussed in State v. Family Bank of Hallandale, 623 So.2d 474, 477 (Fla. 1993), i.e., "the policy of allowing the government to assert defenses against a holder of a warrant must outweigh any innocent purchaser notions."
REVERSED and REMANDED with directions to enter judgment for the state.
MINER, J., concurs.
BENTON, J., concurs with written opinion.
BENTON, Judge, concurring.
I concur in the judgment of the court because I believe the supreme court's decision in this case, State v. Family Bank of Hallandale, 623 So.2d 474, 476 (Fla. 1993) ("unlike negotiable paper, [a warrant] is open to any defense which might have been made to the claim in the hands of the original holder"), which quashed this court's original effort, State v. Family Bank of Hallandale, 593 So.2d 581 (Fla. 1st DCA 1992), requires reversal.
Counsel stipulated at oral argument that Ted's Sheds, Inc., and Ted's Sheds of Broward, Inc., should be viewed for purposes of decision as one and the same entity. This stipulation, which I write in part to memorialize, simplifies analysis, although it does not resolve the dilemma of having to decide which of two relatively blameless parties must bear a loss caused by a third party's (Ted's Sheds') chicanery.
As endorsee of the warrant drawn in favor of Ted's Sheds, the bank is only an assignee, under the Florida Supreme Court's holding, "not a holder in due course in the sense of the law merchant." 623 So.2d at 478 (citation and internal quotation marks omitted). "An assignee has traditionally been subject to defenses or set-offs existing before an account debtor is notified of the assignment." First New England Fin. Corp. v. Woffard, 421 So.2d 590, 595 (Fla. 5th DCA 1982). The State made payment to Ted's Sheds (with the second warrant) after the warrant in controversy here had been assigned to the bank. On remand, the bank did not even argue, however, that the State had notice of the assignment at the time it entered the stop payment order and issued the second warrant. On this record, the bank stands in Ted's Sheds' shoes. The bank cannot recover from the State for the same reason Ted's Sheds, having already been paid, cannot.
NOTES
[1] During the intervening time, Ted's Sheds of Broward, Inc. was involuntarily dissolved. It did not answer Family Bank's complaint, and no default was taken against it.
[2] We note that section 17.13, Florida Statutes (1985), requires the comptroller to issue a duplicate warrant upon the owner thereof presenting the comptroller with a statement, made under oath, reciting the number, date, and amount of any warrant and the circumstances of its loss. If the comptroller deems it necessary, the owner shall file a surety bond of not less than twice the amount of any warrant so duplicated. Yet the comptroller did not obtain a sworn statement or require a surety bond prior to issuing the duplicate warrant. Considering that the state was told there were two Ted's Sheds and that one was located in the county where the first warrant had been sent a week before the duplicate warrant was requested, the state could have protected itself against this situation had it scrupulously followed the above statute.