773 So.2d 96 (2000)
WINTER HAVEN CITRUS GROWERS ASSOCIATION, Appellant,
v.
CAMPBELL & SONS FRUIT COMPANY, Appellee.
No. 2D99-1343.
District Court of Appeal of Florida, Second District.
November 15, 2000.
Mark N. Miller of Lane, Trohn, Bertrand & Vreeland, P.A., Lakeland, and Christine C. Daly of Bradley Johnson Law Firm, P.A., Lake Wales, for Appellant.
Debra J. Sutton of The Law Offices of Debra J. Sutton, P.A., Bartow, for Appellee.
WHATLEY, Judge.
Winter Haven Citrus Growers Association (WHCGA) appeals a final judgment entered pursuant to a jury verdict finding that it breached an oral contract to pack fruit for Campbell & Sons Fruit Company (C & S). We reverse because the jury's verdict is not supported by competent substantial evidence.
For approximately 20 years, WHCGA packed C & S's fruit without the benefit of a written contract. In September 1996, WHCGA informed C & S that it would not pack its fruit for the 1996-1997 season. C & S filed suit against WHCGA for breach of contract and damages.
*97 "Whether a contract is oral or written, it is essential that the parties mutually agree upon the material terms." Holloway v. Gutman, 707 So.2d 356, 357 (Fla. 5th DCA), review denied, 722 So.2d 192 (Fla.1998). "Mutual assent is an absolute condition precedent to the formation of a contract." State v. Family Bank of Hallandale, 623 So.2d 474, 479 (Fla.1993). C & S failed to prove the existence of an enforceable oral contract because it failed to prove that it and WHCGA had agreed upon such material terms as the amount of fruit to be packed and the time for performance. See Metropolitan Dade County v. Estate of Hernandez, 591 So.2d 1124 (Fla. 3d DCA 1992) (for agreement to be legally enforceable, it must be firm or definite in its essential terms). As a result, C & S was under no obligation to bring any fruit whatsoever to WHCGA for packing. Consequently, the alleged oral contract was also not enforceable because it was illusory. See Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4, 5 (Fla. 1985) ("Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound."). The oral contract sued upon, based on the record, was nothing more than a series of casual conversations between representatives of the parties. Even though there was testimony that this was the custom in the industry, that custom cannot change the law of contract.
Accordingly, we reverse and remand with directions that the trial court enter final judgment in favor of WHCGA on the oral contract claim.
C & S has filed a motion for rehearing reminding this court that its complaint against WHCGA also included a count for promissory estoppel. Because promisory estoppel has not been addressed by either party in this appeal, we take no position on that count of C & S's complaint.
Reversed and remanded with directions.
BLUE, J., Concurs.
PARKER, A.C.J., Concurs specially.
PARKER, Acting Chief Judge, Concurring.
I concur with the majority that the facts presented in this case are insufficient to establish an agreement on the material terms of an enforceable oral contract. I write only to provide the factual background upon which the majority's decision is based.
C & S is engaged in the business of buying citrus fruit from growers, contracting for the fruit to be packed, and selling the packed fruit on the open market. WHCGA is a cooperative citrus packing house which packs a wide variety of fruit for its members and then sells it on the open market through a marketing agent. WHCGA also packs and sells fruit for nonmembers upon agreement and under certain conditions. Although C & S is not a member of WHCGA, WHCGA had packed various amounts of fruit for C & S for the past twenty years. During that same time, C & S had also had its fruit packed by at least four other packing houses. In fact, the amount of fruit packed by WHCGA for C & S had declined over the years from 233,803 boxes in the 1990-91 citrus season to 63,819 boxes in the 1995-96 citrus season.
The evidence at trial of the formation of the alleged oral contract for the 1996-97 citrus season came primarily from Archibald Campbell, the president of C & S. He testified that in July 1996, while having lunch with his wife, he was approached by Ken Barbaree, the harvesting manager for WHCGA, who introduced Campbell to Jim Percy, WHCGA's new general manager. According to Campbell, during the brief course of that conversation, he asked Percy "if he is still going to let me pack fruit, and [Percy] said he didn't see any reason why he wouldn't."
In August 1996, Campbell had a second conversation with Percy, which took place in Percy's office. During this conversation, *98 Campbell discussed his concern that WHCGA was harboring hard feelings toward Campbell and C & S as a result of a lawsuit brought by Campbell's bank against WHCGA relating to certain collateral held by WHCGA which secured Campbell's loans. According to Campbell, Percy informed him that WHCGA did not harbor hard feelings toward him and wanted C & S to pack more fruit with WHCGA than it had the year before; however, Percy told Campbell that the price per box would increase. According to Campbell, he told Percy that day that C & S had fruit it "could buy" from a grove very soon.
The only other conversation between the parties took place in early September 1996. While at the WHCGA packing house, Campbell was asked by a WHCGA employee when C & S's fruit would be ready. Campbell responded that he would begin picking fruit in a week to ten days. Campbell asked Percy when WHCGA would be ready, and Percy told him WHCGA would be ready as soon as the fruit was ready. Campbell told Percy during this conversation that C & S had "an opportunity" to buy approximately 100,000 boxes of red grapefruit from a certain grove, but Campbell never told WHCGA that C & S definitely planned to buy this fruit or whether C & S would deliver the fruit to WHCGA for packing. Campbell also never obtained Percy's agreement that WHCGA would pack a specific quantity of fruit. On September 17, 1996, WHCGA informed C & S that WHCGA would not pack C & S's fruit for the 1996-97 season due to the pending litigation with Campbell's bank.
Based on this testimony, I agree that the evidence was insufficient to support the jury's finding that the parties formed an enforceable oral contract. Even though evidence was presented that these rather loose types of arrangements regularly occur between citrus businessmen in the industry, I conclude that these arrangements are insufficient to establish an enforceable contract when a dispute arises.